## BATEMAN v. FARGASON.

*(Circuit Court, W. D. Tennessee. ——, 1880.)*

1. EQUITY—FRAUD—WHEN PLAINTIFF REPELLED—CLEAN HANDS.—The maxim that " he who comes into equity must do so with clean hands," will not repel the plaintiff, unless the fraud complained of in him is a part of the very transaction as to which he seeks relief.

2. SAME—CASE IN JUDGMENT.—On a bill to set aside a settlement and eliminate usury from an account which has been paid by a transfer of land, the confession by the plaintiff that he coerced his wife to sign the deeds will not repel him from a court of equity.

*George Gantt* and *W. D. Beard*, for plaintiff.
*Taylor & Carroll*, for defendant.

HAMMOND, D. J. This is a bill to re-open the settlement of an account on the ground of usury, undue influence, and violated confidence, amounting to an alleged fraudulent imposition by the defendant upon the plaintiff. It appears by the bill that the plaintiff and defendant were joint owners of a plantation, the plaintiff managing the property in the business of growing cotton, which was sent to the defendant for sale, he being a cotton commission merchant; the supplies to furnish the plantation being supplied by the defendant from his stock of merchandise, or otherwise, and charged to the joint account. The account also contains items of money advanced to the plaintiff to pay for his share of the purchase money of the plantation. The parties had a settlement, and the plaintiff appeared to be indebted to the defendant in some $20,000. To secure this the plaintiff executed a mortgage on his share of the land, and subsequently an absolute deed in full payment, his wife joining in the conveyance for the purpose of releasing her dower and homestead rights.

The plaintiff alleges in the bill that he procured this acquiescence of his wife by *coercion*, setting forth in detail his angry denunciations of her for her remonstrances, and his threats to have defendant, whom she greatly disliked, appointed guardian for her children, and such other like conduct as procured her signature to the deeds. The bill is demurred to because of this allegation of coercion and con-

fession of fraud upon his wife, and the maxim is invoked that "He who comes into equity must do so with clean hands." The principle indicated by the maxim only applies to the conduct of the party in respect to the particular transaction under consideration, for the court will not go outside of the case for the purpose of examining the conduct of the plaintiff in other matters, or questioning his general character for fair dealing. Bisph. Eq. 61. It does not mean a general depravity; it must have an immediate and necessary relation to the equity sued for; it must be depravity in a *legal* as well as moral sense. *Dering* v. *Winchelsea,* 1 Cox, Ch. 318; *Nichols* v. *Cabe,* 3 Head, 92; *Sharp* v. *Caldwell,* 7 Humph. 415; *Mulloy* v. *Young,* 10 Humph. 298; *Kelton* v. *Miliken,* 2 Cold. 410; *Lewis' Appeal,* 67 Penn. St. 153, 166.

If it be conceded that the coercion of the wife is evidence of moral turpitude,—and certainly no court can, at this day, do less than severely reprehend such conduct,—still, the plaintiff will not be repelled unless the iniquity complained of in him is connected with and a part of the very transaction as to which he seeks relief. It seems to me plain that, while the coercion of the wife was a method of perfecting the defendant's title to the land, and in that sense connected with the transaction, it is not a part of it. The subject of controversy is the usury in the account, and the other alleged false and fraudulent items as to which there is said to have been an unfair settlement.

The land was given in payment, and the deeds made to effectuate the payment are recited in the bill; the relief asked being to correct the settlement, and to hold it as payment only for so much as is actually due, charging the defendant as trustee for the balance. The case stands as if money had been paid in settlement of defendant's account, and we should be asked to repel the plaintiff because it appeared that he procured the money from some third party—his wife, for example—by questionable and, it may be, fraudulent practices. I do not see that such a case falls within the maxim or rule of equity invoked by the demurrer.

The object of the bill is to surcharge and falsify the mer-

chandise account, and no relief is asked because of the allegation of coercion of the wife. It might afford her a ground for relief, and she is made a defendant, as are her children; for what purpose it does not appear, unless to enable them to file a cross-bill to recover their alleged dower and homestead rights. But no relief is asked against them; they have not appeared, and no process has brought them here. The case must, therefore, be determined alone as between the plaintiff and the defendant, Fargason.

Mr. Spence, in treating of this and the kindred maxim that "he who asks equity must *do* equity," gives some curious illustrations of its application in ancient times, when the chancellor, as a condition precedent to giving the plaintiff relief, would require him to ask pardon of the defendant, to withdraw slanderous words, to be dutiful to his parent or uncle, and in one case to publicly on his knees ask forgiveness of the defendant; all required because of some depraved conduct by the plaintiff. But even in these cases the wrong redressed was to the defendant and not a third party, and Mr. Spence says they are cited, not as precedents, but curiosities of the law. 1 Spence Eq. Jur. 424, and note.

The cases cited by the learned counsel for the defendant all show that the plaintiff was seeking advantage of or relief from the bad conduct with which he was himself charged. *Creath v. Sims*, 5 How. 192; *Wheeler v. Sage*, 1 Wall. 527; *Bleakeley's Appeal*, 66 Pa. St. 191.

The case of *Wheeler v. Sage, supra*, so much relied on in argument, was a case where the plaintiffs had been disappointed in expected profits of a fraudulent transaction by the desertion of their confederate, whose greed induced him to take the whole for himself. Relief was refused, so far as the doctrine now under consideration was applied, because, to have given them relief would have been to sanction the nefarious transaction in the court. No such result will ensue in this case.

Demurrer overruled.