# TYLER v. ANDREWS.

CONFLICT OF LAWS; MARRIAGE; STATUTES.

1. In a proceeding here to determine the validity of a marriage contracted in Maryland by residents of that State, one of whom had died in another State leaving property in this District, the courts here will be governed by the laws of Maryland as there interpreted in determining the matrimonial status.

2. The provision of article LXII. of the Maryland Code, that the marriage of persons within certain degrees of kindred or affinity "shall be void," does not render such a marriage *ipso facto* void, but voidable only upon judgment or decree for that purpose found or passed.

No. 2469.   Submitted January 8, 1913.   Decided February 25, 1913.

HEARING on an appeal by the petitioner from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to a replication to a petition by one claiming to be the widow of a decedent and asking to be awarded as such her proper portion of his estate.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a decree in the supreme court of the District adjudging the marriage between appellant, Laura G. Tyler and

Benjamin Andrews, deceased, to have been void, and further adjudging that appellee was the lawful wife of said Andrews at the time of his death, and entitled to all rights and privileges as his widow.

Upon the death of said Andrews, his will was admitted to probate in this District, appellee being the principal beneficiary. Thereafter appellant filed a supplemental petition in which she averred she was lawfully married to Andrews in Cincinnati, Ohio, in 1902, and that his alleged marriage with appellee was subsequent thereto. Appellant prayed that, as the lawful widow of the testator, she be awarded dower in his real estate (it appears there is none in this District), and one-half his personalty as her distributive share. The pleadings culminated in the replication of appellant and a demurrer thereto by appellee. Appellant, electing to stand upon said replication, the foregoing decree was entered and an appeal taken.

In her replication appellant sets forth that at some time prior to said August 25, 1902, Andrews and appellant's mother, then a widow, intermarried, both being residents of Maryland, and continuing to be domiciled in that State. By that marriage appellant became the stepdaughter of Andrews. Some time after the death of her mother, appellant and Andrews went to Cincinnati, Ohio, and there, upon the above-named date, united in a formal, ceremonial marriage which was valid in the State of Ohio. They thereafter cohabited as husband and wife, both in Ohio and in the State of Maryland, which was "the domicil of them, and each of them, and so remained until the death of said Benjamin Andrews." No proceedings were ever taken for the annulment of said marriage during the lifetime of said Andrews. The replication closes with an averment that appellant is the lawful widow of Andrews, and entitled to the widow's legal share of his personal estate.

*Mr. Henry H. Glassie* and *Mr. Lester L. Stevens* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The argument at bar took a much wider range than the circumstances of the case warrant. The demurrer to the replication admits that Andrews was a resident of the State of Maryland at the time of the marriage between him and appellant, and that he continued to be a resident of that State to the time of his death. It appearing, therefore, that Andrews and appellant were residents of Maryland at the time of their marriage, and subsequently, we will be governed by the laws of that State as there interpreted, in determining the matrimonial status of appellant.

Under the act of February, 1777, of Maryland (1777, chap. 12), which is now article LXII. of the Maryland Code, it is provided that the marriage of persons within certain degrees of kindred or affinity "shall be void." Another section of the act renders liable to prosecution and imprisonment persons going out of the State to marry contrary to the provisions of the act. Another section empowers the general court to inquire into, hear, and determine, either on indictment or petition of either of the parties, the validity of any marriage, "and may declare any marriage contrary to the table of this act, or any second marriage, the first subsisting, null and void." In 1851 one Robert Harrison, a resident of Maryland, was married in the District of Columbia to his niece, also a resident of Maryland. They returned to Maryland, where they cohabited as husband and wife for several years, when they died leaving children. Litigation ensued which involved the validity of said marriage. The court of appeals, in an exhaustive opinion, sustained the marriage. *Harrison* v. *State,* 22 Md. 468, 85 Am. Dec. 658. The court pointed out that if it was the purpose of the act of 1777 to make marriages of persons related within the prohibited degrees "null and void absolutely," the provisions giving jurisdiction to the general court to hear and determine

upon such marriages were vain and superfluous. The court further pointed out that the act embraces both lineal and collateral relations, those by consanguinity as well as by affinity. The court, therefore, found it "impossible to presume that the word 'void' was used in its most absolute and unrestricted sense." Upon a consideration of the whole act, the ruling was that the word "void" as there used "is to be understood void upon judgment or decree, for that purpose found or passed, and not *'ipso facto'* void." The *Harrison Case* being directly in point, unless subsequently modified or overruled, is declaratory of the law of Maryland and will be recognized here. Appellee, however, insists that in *Jackson* v. *Jackson,* 82 Md. 17, 34 L.R.A. 773, 33 Atl. 317, the decision in the *Harrison Case* was overruled. Let us see. In *Jackson* v. *Jackson,* the sole issue involved was whether the plaintiff was the legitimate daughter of R. W. Jackson, who died intestate. The claim to legitimacy was based upon an alleged marriage of the parents of plaintiff in the State of Pennsylvania, where they then lived, and the evidence relied upon to establish this marriage was general reputation, cohabitation, and acknowledgment. The marriage was sustained and recognized as valid, notwithstanding that such a marriage would not have been valid in Maryland. It thus appears that the question before the court in no way involved the construction of said act of 1777, nor was any allusion made to the *Harrison Case.* The court, however, did qualify its ruling with the following observation: "We are not to be understood as speaking of marriages tolerated elsewhere, but denounced by our own positive State policy as affecting the morals or good order of society. Such marriages, however regarded elsewhere, would not be treated as valid here. For instance: The statutes of Maryland peremptorily forbid the marriage of a white person and a negro, and declare all such marriages forever void. It is therefore the declared policy of this State to prohibit such marriages." It is obvious that the court had in mind marriages which so far affected the morals or good order of society in the State that the legislature, in unqualified terms, had declared a distinctive State policy opposed to their recognition. Such is

the general rule everywhere. But the marriage here in question is not of that class. If any doubt remained as to the correctness of our understanding of the decision in the *Jackson Case,* it would be dissipated by the subsequent ruling of the court in *Dimpfel* v. *Wilson,* 107 Md. 329, 13 L.R.A.(N.S.) 1180, 68 Atl. 561, 15 Ann. Cas. 753. In that case Dimpfel's wife obtained a divorce from him in New York, the decree prohibiting him from remarrying during the lifetime of the libellant. He afterwards remarried in the District of Columbia, his former wife being alive. The marriage, under the decisions of the State of New York, was valid there. Under the laws of the District of Columbia (12 Stat. at L. 59, chap. 158), it is ground of divorce if the marriage was contracted while either party thereto had a former wife or husband living, unless the former marriage shall have been dissolved, and no restriction shall have been imposed upon the party contracting said second marriage. Dimpfel died in Maryland, and the validity of his second marriage was in question. The court ruled that the marriage was not void, but voidable only, upon a bill for divorce, and in its opinion, after reviewing the *Harrison Case,* said: "While that case is, of course, not conclusive of this, and not wholly applicable, it shows the anxiety of our predecessors to protect innocent issue from being pronounced illegitimate, by not being willing to declare such marriages void *ab initio,* notwithstanding the language used in the statute, *when other parts of the statute and the circumstances permitted a construction which made them only voidable* (italics ours)." It is apparent, therefore, that the court did not understand its decision in the *Jackson Case* as in any way impairing the rule established in the *Harrison Case.* Moreover, it appears from an examination of the "Law of Domestic Relations in Maryland," pages 16 and 17, by Mr. Chief Judge Harlan, of the supreme bench of Baltimore city, that the doctrine of the *Harrison Case* has long been regarded as settled by the bar of the State.

The marriage of appellant and Andrews in Ohio was only voidable in Maryland, and, no steps having been taken during

the lifetime of the parties to avoid it, appellant was his lawful wife at the time of his death, and must be so considered in this District. It follows that the decree must be reversed, with costs, and the cause remanded, and it is so ordered.     *Reversed.*