## LOUGHRAN *v.* LOUGHRAN ET AL., TRUSTEES.

No. 565.  Argued March 7, 1934.—Decided April 30, 1934.

*Mr. Robert H. McNeill* for petitioner.

*Mr. Wm. E. Leahy,* with whom *Messrs. Wm. J. Hughes, Jr., Eugene B. Sullivan,* and *James F. Reilly* were on the brief, for respondents.

218

Mr. Justice Brandeis delivered the opinion of the Court.

This case is here on certiorari to the Court of Appeals of the District of Columbia. It is a suit in equity brought in the Supreme Court of the District in 1932, by Ruth Loughran, then resident there. The defendants are John Loughran and others, trustees of real estate there located. The estate of Daniel Loughran, Jr., deceased, is a beneficiary. The plaintiff alleges that she is Daniel's widow; and she seeks to enforce, as such, rights in the nature of dower and to recover unpaid alimony. She alleges that in 1926 she married Daniel in Florida after living there more than two years; that in 1927 she and her said husband established their domicile in Virginia; that in 1929, while they were residing in Virginia, she obtained there a decree of divorce from him *a mensa et thoro,* with an award of alimony payable monthly; and that in 1931, while she remained Daniel's wife, he died, leaving a part of the alimony unpaid.

The trustees defend on the ground that before her marriage to Daniel, the plaintiff had been married to Henry Daye; that in 1924, while she and Daye were domiciled in the District, he had secured there an absolute divorce for her adultery with Daniel; that being the guilty party, she was by § 966 of the Code of the District prohibited from remarrying; and that, having remarried in violation of the statute, she is not in a position to enforce in a court of the District the alleged rights in the estate of the deceased. A copy of the record of the Daye divorce proceeding is annexed to the answer.

Section 966 provides:

" A divorce from the bond of marriage may be granted only where one of the parties has committed adultery during the marriage: *Provided,* That in such case the

innocent party only may remarry, but nothing herein contained shall prevent the remarriage of the divorced parties to each other: . . ."

On motion of the plaintiff, the case was heard on bill and answer. The trial court entered a decree for the plaintiff in respect to the claim in the nature of dower. That decree was reversed by the Court of Appeals of the District. It ordered that the cause be remanded to the lower court for further proceedings not inconsistent with the opinion, 62 App.D.C. 262, 263; 66 F. (2d) 567, 569, saying:

" It is unnecessary for us to concern ourselves with the legality of the Florida marriage in that State, or with the subsequent divorce proceedings in the State of Virginia since the disposition of the case is dependent entirely upon the law of the District of Columbia. In so far as the law of the District is concerned, the marriage between plaintiff and Daniel Loughran, Jr., in Florida, if performed in the District of Columbia, would be absolutely void, and the plaintiff, being the offending party against the law of the District, is in no position to enforce any claim against the estate of Daniel Loughran, Jr., growing out of the marriage in Florida."

Disclaiming consideration of the doctrine of clean hands, the court added:

" Plaintiff, by her own unlawful conduct has placed herself without the pale of the law, and cannot be heard in a court of equity to take advantage of her own wrong."

The trustees insist that the bill was properly dismissed because the plaintiff, retaining her domicile in the District, went to Florida and married there in order to evade the prohibition of § 966. The plaintiff contends that the admitted facts constitute no defence; that because the marriage was legal in Florida, its legality should, under the established doctrines governing conflict of laws, have been recognized by the courts of the District; and, more-

over, that this was required by the full faith and credit clause, since the validity of the Florida marriage had been adjudicated by the Virginia decree of divorce *a mensa et thoro*.

*First.* Marriages not polygamous or incestuous, or otherwise declared void by statute,[1] will, if valid by the law of the State where entered into, be recognized as valid in every other jurisdiction. *Meister* v. *Moore,* 96 U.S. 76; *Travers* v. *Reinhardt,* 205 U.S. 423, 440. The mere statutory prohibition by the State of the domicile either generally of the remarriage of a divorced person, or of remarriage within a prescribed period after the entry of the decree, is given only territorial effect. Such a statute does not invalidate a marriage solemnized in another State in conformity with the laws thereof.[2]

*Second.* We have no occasion to decide what the rights of the parties would be if it appeared that the plaintiff and her paramour, retaining at all times their domicile in the District, had gone to Florida for the purpose of evading § 966 by a marriage there; and had then returned to the District to live as man and wife.[3] It is argued that marriage within the District would have been illegal because prohibited by § 966; and that a marriage which would be illegal if entered into within the District must be treated under § 1287 as void, even if valid under the law of the State in which it was solemnized. But § 1287

[1] For collection of statutes see: Vernier, American Family Laws, §§ 32, 45, 92. Compare The American Law Institute, Restatement of Conflict of Laws, Proposed Final Draft No. 4, March 22, 1934, pp. 88–95.

[2] See *Commonwealth* v. *Lane,* 113 Mass. 458; *Dudley* v. *Dudley,* 151 Iowa 142; 130 N.W. 785; *In re Miller's Estate,* 239 Mich. 455; 214 N.W. 428.

[3] By the widely prevailing view, the marriage would, even under such circumstances, be held valid by the courts of the domicile in the absence of express provision to the contrary. For cases see Joseph H. Beale, et al., Marriage and Domicile, 44 Harv.L.Rev. 501, 514–517.

has no application to marriages in violation of the prohibition of § 966. Section 1287 provides:

" If any marriage declared illegal by the aforegoing sections shall be entered into in another jurisdiction by persons having and retaining their domicile in the District of Columbia, such marriage shall be deemed illegal, and may be decreed to be void in said District in the same manner as if it had been celebrated therein."

The sections preceding § 1287 relate solely to marriages void, because incestuous or polygamous, and to those which are voidable, because entered into by a person who was a lunatic, under the age of consent, or impotent, and those which are voidable because procured by force or fraud. In the case at bar, there is no suggestion of any such obstacle to the validity of the marriage. The only objection urged is that by marrying in Florida the plaintiff violated § 966. But the preceding sections do not refer to § 966; and they contain no reference to remarriage of divorced persons. Their only reference to divorce is in Paragraph Third of § 1283 which declares void:

" The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce."

Since the plaintiff had been legally divorced from Daye in the District while the parties were domiciled there, and the decree became effective under § 983a unconditionally and irrevocably, she was thereafter an unmarried woman; and if she had cohabited with Daniel in the District after the Florida marriage she would not have been guilty of polygamy. *Commonwealth* v. *Lane,* 113 Mass. 458, 460, 462.

Moreover, it does not appear that the plaintiff and Daniel did retain their domiciles in the District after her divorce, or that after the Florida marriage they ever lived in the District as man and wife. The trustees argue that it must be assumed on the pleadings that plaintiff's resi-

dence in Florida and the marriage there were not in good faith.[4] But the bill alleged the good faith of the residence and marriage in Florida; and the answer contains no specific denial of that allegation. Nor does it contain any averment that the residence in Florida and marriage there were with the intent of evading the prohibition against remarriage.[5] The Court of Appeals did not pass upon the issue sought to be raised. It expressly disclaimed deciding whether the Florida marriage was valid or what the effect of the Virginia decree was. And the question whether the marriage in Florida should be deemed void within the District because the parties went to Florida to evade the prohibition of § 966 was not presented by the petition for a writ of certiorari.

*Third.* The Court of Appeals stated that "the single question for determination here is, whether or not plaintiff is entitled to her dower interest"; and it held that the bill should be dismissed, regardless of whether the marriage was valid under the law of Florida. The requisites of dower are a valid marriage; seizin of the husband; and his death. It may be assumed that the law of the situs of real estate determines whether a widow is entitled to dower. Compare *De Vaughan* v. *Hutchinson,* 165 U.S. 566, 570. But, if the marriage was valid under the laws of Florida, the plaintiff was, under established doctrines of the conflict of laws, Daniel's widow. As such she was entitled, as an incident of the marriage, to dower in the property within the District. For, while a statute of the

---

[4] The argument rests upon the phraseology of the answer and the equity rules of the Supreme Court of the District.

[5] The allegation is " that having openly and in utter disregard of the prohibition contained in said statute violated the terms thereof, she cannot now return to this jurisdiction and this Honorable Court and herein make application for relief with respect to the very situation and relationship which she could and did create only in direct violation of the prohibitory mandate of the statute."

District provides for forfeiture of dower in case of the wife's adultery during marriage;[6] none denies dower to a widow because she had been guilty of adultery prior to the marriage with her late husband.

Section 966 is not extra-territorial in its operation. It does not purport to prohibit remarriage outside the District; and no other statute denies dower to a widow because by remarrying elsewhere she had disregarded the prohibition contained in § 966. It does not make remarriage a crime, or in terms impose any penalty, even if contracted within the District; and obviously it could not make criminal remarriage elsewhere. Nor does it in terms declare the remarriage void. Apparently, it is the law of the District that a remarriage elsewhere in disregard of the prohibition of § 966, even where both parties remained domiciled in the District, is not void *ab initio*, but, at most, voidable; and that a voidable marriage cannot be annulled after the death of either spouse.[7]

No case has been found in which, independently of statutory direction, a widow has been denied dower on the ground that a remarriage, legal by the law of the place where celebrated, had been entered into in violation of some prohibition imposed by the law of the State in

---

[6] The Code of the District 1929, Title 14, § 30, declares: " If a wife willingly leave her husband, and go away, and continue with her advouterer, she shall be barred forever of action to demand her dower, that she ought to have of her husband's lands, if she be convict thereupon, except that her husband willingly, and without coercion reconcile her, and suffer her to dwell with him in which case she shall be restored to her action."

[7] *Sammons* v. *Sammons* (S.C.D.C.), 46 W.L.R. 39, 41. See *Tyler* v. *Andrews*, 40 App.D.C. 100, 104; *Simmons* v. *Simmons*, 57 App.D.C. 216, 218–219; 19 F. (2d) 690, 692–3; *Abramson* v. *Abramson*, 60 App.D.C. 119, 121, 122; 49 F. (2d) 501, 503, 504. Compare *Dimpfel* v. *Wilson*, 107 Md. 329; 68 Atl. 561; *Bonham* v. *Badgley*, 7 Ill. 622.

which the divorce was granted and the property was situated.[8] Ordinarily the operation of a statute of descent and distribution is held not affected even by the fact that the death of the decedent was caused by a crime of the heir;[9] and, by the common law, dower is not barred even by misconduct during marriage. Since, as matter of substantive law, the plaintiff is entitled to dower in property within the District, if the marriage in Florida was valid, and its validity was assumed by the Court of Appeals, we have no occasion to consider whether the decree in the Virginia divorce proceedings made that matter *res judicata.*

*Fourth.* The relief sought by the bill includes, besides dower rights, a claim under the Virginia decree for the alimony which had accrued and remained unpaid at the time of Daniel's death. The right to recover the alimony is independent of the right to dower. It rests upon a judgment to which, so far as appears, full faith and credit must be given by the courts of the District. It is true that, under rules of law generally applicable, these courts may refuse to enforce a mere right of contract if it provides for doing within the District things prohibited by its laws. *Bothwell* v. *Buckbee, Mears Co.,* 275 U.S. 274, 278. It may, in the exercise of the police power, prohibit the enjoyment by persons within its borders of many rights acquired elsewhere and refuse to lend the aid of its courts to enforce them. *Home Insurance Co.* v. *Dick,* 281 U.S. 397, 410. But when rights, however arising, have ripened into a judgment of a court in another State, the full faith

---

[8] Compare *Putnam* v. *Putnam,* 8 Pick. 433; *Dickson* v. *Dickson's Heirs,* 1 Yerg. 110. See 18 C.J., p. 859, § 102.

[9] *McAllister* v. *Fair,* 72 Kan. 533; 84 Pac. 112; *Eversole* v. *Eversole,* 169 Ky. 793; 185 S.W. 487; *Gollnick* v. *Mengel,* 112 Minn. 349; 128 N.W. 292; *Holloway* v. *McCormick,* 41 Okla. 1; 136 Pac. 1111; *Johnson's Estate,* 29 Pa. Sup. Ct. 255.

and credit clause applies. *Fauntleroy* v. *Lum*, 210 U.S. 230; *Converse* v. *Hamilton*, 224 U.S. 243, 260; *Kenney* v. *Supreme Lodge*, 252 U.S. 411, 415. And courts of the District are bound, equally with courts of the States, to observe the command of the full faith and credit clause, wherever applicable. *Bradford Electric Light Co.* v. *Clapper*, 286 U.S. 145, 155. Thus, the facts stated afford no basis in the substantive law for dismissal of the bill so far as it seeks to recover unpaid alimony. Whether the fact that this claim has been presented also in the probate court constitutes a reason for denying relief here, was not discussed below, and on this matter we express no opinion.

*Fifth.* It remains to consider whether the denial of relief can be justified on some principle of adjective law. The Court of Appeals holds that the " plaintiff by her own unlawful conduct has placed herself without the pale of the law "; but it does not state specifically the ground for that conclusion. The bar applied is not the plea of illegality commonly interposed in suits brought to enforce contracts tainted by illegality. In those suits the illegality relied on is inherent in the cause of action; is directly connected with the relief sought; and constitutes a substantive defence. Here, the relation of the illegality to the relief sought is indirect and remote. The wrong done is a thing of the past and is collateral. By the long line of cases following *Connolly* v. *Union Sewer Pipe Co.*, 184 U.S. 540, it is settled that illegality constitutes no defense when merely collateral to the cause of action sued on. A " person does not become an outlaw and lose all rights by doing an illegal act." *National Bank & Loan Co.* v. *Petrie*, 189 U.S. 423, 425. Courts grant relief against present wrongs and to enforce an existing right, although the property involved was acquired by some past illegal act. *Brooks* v. *Martin*, 2 Wall. 70, 79, 80; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 499, 500.

The Court of Appeals, while it disclaimed acting on the doctrine of clean hands,[10] declared that *Olverson* v. *Olverson*, 54 App.D.C. 48; 293 Fed. 1015 (decided by it in 1923) is decisive of the case at bar. But both the facts and the relief sought are different in the two cases. In the first place, the parties in the *Olverson* case were at the time of the marriage domiciled in the District; remained so when they went to Baltimore for the marriage ceremony with the purpose of evading the prohibition of § 966; returned immediately thereafter to the District; and then lived in the District as man and wife. On the other hand, in the case at bar it does not appear that the plaintiff and Daniel were domiciled in the District at the time of the marriage; or that they went to Florida in order to evade the prohibition of § 966; or that during their marriage they lived in the District; or that they ever cohabited there as man and wife. In the second place, the *Olverson* suit was brought by a wife for a decree of divorce *a mensa et thoro* with a motion for alimony; and was dismissed on the ground that the plaintiff could not " ask the courts of this jurisdiction to relieve her of the obligations of a relation which she willfully and wrongfully assumed."

The suit at bar was brought after termination of the marriage by death to enforce existing property rights growing out of the marriage in Florida and the decree entered in Virginia. It was not brought to enforce any transaction had within the District; nor was it brought to enforce an illegal contract; or to further an illegal relation.[11] Equity does not demand that its suitors shall have led blameless lives. Neither the doctrine of clean

[10] It had stated in *Simmons* v. *Simmons*, 57 App.D.C. 216, 218; 19 F. (2d) 690, 693, that the *Olverson* case rested on the doctrine of clean hands.

[11] Compare *Western Union Telegraph Co.* v. *Union Pacific Ry. Co.*, 3 Fed. 423, 427–8; *Bateman* v. *Fargason*, 4 Fed. 32.

hands, nor any kindred principle on which courts refuse relief, is applicable here. The decree of the Court of Appeals is vacated and the cause remanded to it for further proceedings not inconsistent with this opinion.

*Reversed.*