**TRAILERSHIPS, Inc., v. UNITED STATES.**

No. 45923.

Court of Claims.

April 1, 1946.

John G. Turnbull, of New York City (Louis O. Bergh, of New York City, on the brief), for plaintiff.

Frank Staley, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (James McCandless, of Pittsburgh, Pa., and William A. Mellon, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The plaintiff became the owner, by purchase, of the vessel Governor Cobb, on April 7, 1939. The price paid was $75,000, of which $21,000 was paid in cash and the balance in preferred stock of the plaintiff company of the par value of $54,000.

On June 5, 1942, the War Shipping Administration, pursuant to the Merchant Marine Act of 1936, as amended, 46 U.S. C.A. § 1101 et seq., requisitioned the use of the vessel and stores aboard, and on July 25, 1942, requisitioned title.

In May 1943 the War Shipping Administration fixed the sum of $100,000 as just compensation for the use, title, appurtenances and stores of the vessel. In the same month the plaintiff notified the War Shipping Administration that the amount was unsatisfactory and that, pursuant to the Merchant Marine Act of 1936, as amended,[1] it elected to receive 75 percent of the amount awarded and to sue for a sufficient balance for the two items to amount to what it regarded as just compensation.

The issues are whether the plaintiff is entitled to recover more than the $25,000 that is admittedly a part of the amount fixed, and whether interest should be allowed, and, if so, the time and rate, as a part of just compensation.

The vessel was built in 1906 at a cost of $646,924.37. Her length was 289.1 feet, the beam 54 feet, the cruising speed 18 knots, the hull was iron with wooden superstructure. She was equipped with three Parsons turbines and six marine type Scotch boilers. There were 175 staterooms as well as steerage quarters. She was a special type passenger and freight vessel primarily adapted to passenger service and suited to operating not more than 200 miles from shore, built for service between Boston and Canadian ports, in which capacity she was used until 1920. At times before that date she was chartered for service during the winter months in Florida and Cuban waters.

From about 1934 until early 1937 the vessel was taken out of service and laid up in Florida. In March 1937 she was purchased by George T. Ellis for a cash consideration of $16,000, repaired, reconditioned and equipped for summer passenger excursions in New England waters. The amount ex-

---

[1] Sec. 902 (d), Merchant Marine Act of 1936, as amended, 53 Stat. 1256, 46 U.S.C.A. § 1242 (d).

pended for such reconditioning and equipment is not shown in complete detail, but was estimated to be in excess of $100,000. The operating license expired in September 1937 and was not renewed, the vessel remaining in Boston until purchased by plaintiff April 7, 1939.

The ship was towed to Philadelphia in 1939 where it remained at the wharf until requisitioned by the defendant in 1942.

During the month of April 1942, however negotiations were entered into with the National Sugar Refining Company in connection with a proposal for a chartering of the Governor Cobb by the latter company for a series of trips for the purpose of transporting sugar from Cuba to Florida. Some progress had been made in these negotiations, contingent upon the vessel's being made seaworthy.

Estimates were made by a shipyards company as to the cost of reconditioning but before any contract was made the vessel was requisitioned by defendant on June 5, 1942.

It is difficult to determine the true value of the Governor Cobb at the time of the taking. There is no doubt that she was almost venerable with age. In the language of the livestock country, she was not exactly spavined, but she was not in good flesh. Time had taken its inevitable toll. Had conditions remained normal it is doubtful if the Governor Cobb would ever have been used again for regular transportation purposes, though she might have been used seasonally or as a relief ship.

But the times were not normal. Submarine sinkings were taking an enormous toll. Transportation became a problem on both land and sea. Box cars that had been on the railway sidings for twenty years were repaired and pressed into service to meet the vast demands of increased traffic. This increased traffic plus the loss of shipping facilities gave some value to anything that would float.

The defendant found that the cost of repairs and reconditioning exceeded any of the estimates. About $2,000,000 was spent on repairs, reconditioning and improvements.

The experts differed widely as to the value of the Governor Cobb at the time of the taking, ranging all the way from a small value for junk or scrap to some $600,000.

Despite the obsolescent condition of her superstructure and the outmoded condition of much of her machinery and equipment, the vessel concededly had a fine quality iron hull.

■ Taking all the facts and circumstances into account, we find that the fair and reasonable value of the Governor Cobb, including the use and title and the stores, equipment and furnishings aboard was $125,000 at the time of the requisition. Olson v. United States, 292 U.S. 246, 256, 257, 54 S.Ct. 704, 78 L.Ed. 1236.

■ The plaintiff is entitled to recover the sum of $50,000, with interest thereon from June 5, 1942, at the rate of 4 percent per annum, plus interest on $75,000 from June 5, 1942, to June 2, 1943 (the time of the partial payment), at the rate of 4 percent per annum. Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed 934.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.