FRANCISCO SÁNCHEZ CORDERO, Plaintiff and Appellee, *v.* VÍCTOR COLL CINTRÓN ET UX., Defendants and Appellants.

No. 9844.    Argued April 8, 1949.—Decided April 22, 1949.

*Cayetano Coll Cuchí* for appellants. *Baldomero Roig Vélez,* and
*Artemio P. Rodríguez* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

By public deed executed on May 21, 1946, Víctor Coll
Cintrón and wife sold to Francisco Sánchez Cordero and wife
a lot having an area of 148 square meters, in which there is
located a one-story frame house, in the town of Cataño. It
was stated therein that the property was free from liens and
encumbrances; that the conveyance was carried out for the
agreed price of $900 and that the sellers bound themselves
to the warranty in case of eviction.

On May 13th of the following year, Sánchez Cordero
brought, in the District Court of Bayamón, an action for
damages against Coll Cintrón and wife. It was alleged
therein that a few days after the above-mentioned deed was
executed, he discovered that the property involved in the con-
tract was recorded in the name of former owners with a
different description from that appearing in the deed exe-
cuted in his favor; that in the registry of property it
appeared that the property acquired by him was mortgaged
in favor of a third person for the sum of $450 principal, with
interest thereon at 1 per cent monthly, plus an additional
charge of $50 for interest and another of $75 for expenses,
costs, and attorney's fees; that in a suit for the recovery
of said mortgage credit in an ordinary action the defendants
therein were adjudged to pay the creditor $744 as principal,
plus interest thereon, and $75 for expenses, costs, and attor-
ney's fees; that in another civil action subsequently insti-
tuted for the enforcement of the judgment rendered in the
action for collection of mortgage credit, the sale at public
auction of the property was ordered with the purpose of pay-
ing to the plaintiff therein the sum of $819; that upon the
auction of the property being announced he ran the risk of
sustaining serious damages, for which reason on April 17,
1947, he paid to the creditor the total sum of $892.50 to
cover the amount of the judgment, legal interest thereon,

and costs, the creditor then cancelling by public deed the said mortgage credit; and that since the contract of purchase and sale was executed the defendants have refused to pay the above mortgage debt, thereupon causing the plaintiff damages amounting to $900.

The defendants answered and alleged, as special defense, that the plaintiff filed in the same court another action against them praying for the rescission of the contract under which the defendant had sold to him the urban property mentioned in the complaint for the price of $1,400, although the deed which embodied the contract fixed the sum of $900; that the plaintiff desisted from said action and filed the present one for damages; and that although in the deed of May 21, 1946, it was stated that the defendants sold to the plaintiff the urban property mentioned in the complaint for $900, the agreement before the execution of said deed was that the value of the immovable would be $1,400, and that the difference would be kept by the plaintiff to pay the lien encumbering the property and the registration expenses; and that they have not caused any damages to the plaintiff.

Issue having been thus joined, the suit went to trial. Upon it appearing from the evidence for the plaintiff that although in the deed it was stated that the price paid for the property was $900, the truth was that the plaintiff and his wife paid for it $1,400 and the amount of $900 was stated only "for the purpose of avoiding the payment of taxes" the defendants requested the court to dismiss the plaint since the plaintiff had resorted to the co[...] transaction which involved fraud to the public t[...] order entered by the court dismissing that [...] the object of the first assignment of err[...]

The general rule, undoubted[...] executed in violation of the law is v[...] tracting parties can not demand the[...] Section 4, Civil Code, 1930 ed.; E[...]

U. S. 336, 33 L. ed. 172, 177. However, although it is true that in this case the evidence introduced was to the effect that a lesser sum than that which was actually paid as consideration of the contract was set forth in the deed, it can not be stated for that sole reason that said consideration was illegal and, therefore, that the contract was void. *Latorre v. Cruz*, 67 P.R.R. 696; *Ríos et al.* v. *Amorós et al.*, 27 P.R.R. 735. Cf. *González et al.* v. *Fumero et al.*, 38 P.R.R. 497. Upon fixing a lower sum as consideration it was done for the purpose of trying to obtain that the property be subsequently appraised by the Treasurer of Puerto Rico at a sum which would entitle the purchasers to the exemption provided by § 291 of the Political Code, as amended by Act No. 27 of April 12, 1941 (Laws of 1941, p. 456)[1] (When appraising properties the Treasurer naturally makes his own valuation thereon and the price stipulated by the parties in a deed is not in any way binding nor decisive for said officer.) In so doing, § 2 of Act No. 101 of May 12, 1943 (Laws of 1943, p. 278) which specifies the internal revenue stamps to be cancelled on the originals and copies of every public deed, was also violated.[2] The question to be determined therefore, is whether in spite of the existence

[1] Section 291 of the Political Code provides in its pertinent part that "there shall also be exempted from taxation all property on which the owner, being the head of a family, has his homestead constituted, provided his total property is assessed at less than one thousand (1,000) dollars."

[2] Section 2 of Act No. 101 of 1943, provides in part as follows: "On each original document or instrument authorized by a notary ᵒʳ protocolization, and on copies thereof, there shall be affixed ˙d internal-revenues stamps of the following values or de-

sideration involved exceeds $500, but does not exceed he original and fifty cents for each copy; ideration involved exceeds $1,000, but does not for the first $1,000 and twenty-five cents addi- dollars or fraction thereof for the original, and 000 and ten cents additional for each thousand for each copy.

of those illegalities one of the parties may demand damages from the other for breach of the contract.

■■ The Supreme Court of the United States, through Mr. Justice Brandeis, in *Loughran* v. *Loughran*, 292 U. S. 216, 78 L. ed. 1219, 1226, (reconsideration denied, 78 L. ed. 1474), in interpreting a case which involved an illegality, stated in the course of its opinion that when in this kind of suits the illegality relied on is inherent in the cause of action and is directly connected with the relief sought the same constitutes a substantive defense, but that when the relation of the illegality to the relief sought is indirect and remote, the wrong done is a thing of the past and is collateral; that by the long line of cases following *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 46 L. ed. 679, it has been settled that illegality constitutes no defense when merely collateral to the cause of action sued on, and that a person does not become an outlaw and lose all rights by doing an illegal act. See also *National Bank & Loan Co.* v. *Petrie*, 189 U. S. 423, 47 L. ed. 879; 1 Am. Jur., p. 718, § 211 and cases cited therein.

In the present case, similarly as in the cited cases, the relation of the illegality with the relief sought is indirect and remote. It is collateral to the contract entered into by the parties. The fixing of a price lower than that actually agreed does not render void the contract entered into by them. It only affected the public treasury. The action is not directed, however, against the public treasury. Nor does it involve the appraisal of the property sold or the stamps which should be cancelled on the original of the deed and copies thereof. Indeed, there is no ground for the existing indirect and remote illegality to render void the contract entered into by the parties. The first error assigned has not been committed.

■ The defendants also contend that the lower court erred in sustaining the complaint. In its judgment the court

adjudged the defendants to pay to the plaintiffs the sum of $892.50 as damages, together with costs, and $100 as attorney's fees.

Pursuant to § 1372 of the Civil Code (1930 ed.):

"If the estate sold should be encumbered by any nonapparent burden or easement, not mentioned in the instrument, of such a nature that it must be presumed that the vendee would not have acquired it had he been aware thereof, he may request the rescission of the contract, unless he should prefer the proper indemnity.

"During a year, to be counted from the date of the execution of the instrument, the vendee may either institute the rescissory action or request the indemnity.

"After the lapse of one year, he can only demand such indemnity within an equal period, to be counted from the date on which the incumbrance or easement was discovered by him."

We stated in *Mejías v. Mouriño*, 68 P.R.R. 614, 616, that "Explaining the corresponding § 1483 of the Spanish Civil Code, Manresa says that if the encumbrance or the non-apparent easement is recorded in the registry of property, the purchaser may easily know the condition of the property sold to him and if he suffers any damages he should blame only himself for his negligence." And that "The commentator adds that . . . when the encumbrance appears from the Registry, the purchaser shall not be entitled either to the rescission of the contract or to any indemnity. Manresa, *Comentarios al Código Civil Español*, vol. 10 (2d ed. 1908) page 221. See also Scaevola, *Código Civil*, vol. 23, page 599 and Judgment of the Supreme Court of Spain of April 8, 1903, *Jur. Civil*, vol. 95, pages 597, 614." That case apparently holds that the defendants are right. But in the instant case it is necessary to determine the effect which the fact of having stated in the deed that the property was not recorded might have. Regarding this particular the same textwriter referring to § 1483 of the Spanish Civil Code above cited says that:

"Upon the vendor warranting on his own responsibility, that the properties were free from any liens and that he was liable for the eviction, as well as the damages and costs, such covenants constitute a perfect agreement on a licit matter which entitles the purchaser to demand the warranty against eviction of the thing sold for the recorded encumbrances affecting the real property, as this shows that it was the intention of the vendor to compensate the damages caused to the purchaser relieving the latter, in view of the vendor's responsibility, from performing the investigations which, in the absence of an express agreement, are prescribed by the positive law (Judgment of January 5, 1916)." (135 *Jur. Civil* 20). Manresa, opus cited, volume X, 1931 ed., p. 207.

We fully agree with the foregoing commentary of the learned textwriter. If the vendor expressly warrants the purchaser in the deed of conveyance that the property the object of the contract is free from encumbrances and that he binds himself to the warranty in case of eviction, we see no reason why the purchaser is bound by an entry in the Registry of Property, especially when the property appears recorded in the name of another person and with a different description.

The oral and documentary evidence introduced shows that the alleged damages were suffered by the plaintiff and that the lower court acted correctly in sustaining the complaint.

If in Puerto Rico there existed an act declaring null and void every contract in which, for the purpose of avoiding the payment of any taxes or of the notarial fees, the contracting parties state a false consideration, the result would be, of course, different. But such act does not exist and it is incumbent on the court only to apply and construe the laws such as they find them. Whether such a law should exist does not concern us.

The judgment appealed from will be affirmed.