## FELDMAN *v.* FELDMAN.

1. HUSBAND AND WIFE—SUIT FOR SEPARATE MAINTENANCE—BAD FAITH.

   Bad faith on part of wife in bringing suit was not established by the fact that she, presumably under the advice of counsel, brought her suit for separate maintenance rather than for an absolute divorce, since the wife had the privilege of taking advantage of the provisions of the separate maintenance act in furtherance of her desire that defendant husband be required to support her and the 3 children, 2 of whom, his by a former marriage, were adopted by her (CL 1948, § 552.301 *et seq.*).

2. SAME—SEPARATE MAINTENANCE—BAD FAITH—AMENDMENT OF BILL—EVIDENCE.

   A wife's attitude that her allegedly financially-able husband should make satisfactory arrangement for the support of herself and 3 children before amending her bill for separate maintenance to request an absolute divorce may not be said to be indicative of bad faith on her part in bringing suit for separate maintenance (CL 1948, § 552.301 *et seq.*).

3. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY—BAD FAITH.

   Dismissal of wife's bill for separate maintenance for extreme cruelty on ground that wife had acted in bad faith in bringing suit for such relief *held*, reversible error and requires remand for completion of hearing, where defendant had not sought dismissal on such ground and court elicited from wife that she would consent to amend her bill to ask for absolute divorce if husband would agree to pay her $50,000, and wife had not completed her testimony when the hearing was stopped.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur, Divorce and Separation § 211.

4. SAME—SEPARATE MAINTENANCE—BAD FAITH—IMPROVIDENT ORDER. OF DISMISSAL.

> The Supreme Court may not set aside order dismissing bill for separate maintenance and grant decree for such relief, sought on ground of extreme cruelty, where order had been improvidently entered by trial court on ground that plaintiff had brought such suit in bad faith and had stopped the hearing before its completion while plaintiff had other witnesses to be heard.

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted October 16, 1959. (Docket No. 93, Calendar No. 48,087.)   Decided January 4, 1960.

Bill by Ada Feldman against Irving I. Feldman for separate maintenance, with Kotcher Tool & Engineering Co., a Michigan corporation, joined to restrain disposition of property. Cross bill by defendant for divorce withdrawn during hearing. Bill dismissed while case incomplete. Plaintiff appeals. Reversed and remanded.

*William Henry Gallagher (Abraham Satovsky,* of counsel), for plaintiff.

*Charfoos, Gussin, Weinstein & Kroll (William J. Weinstein,* of counsel), for defendants.

CARR, J. This is a suit for separate maintenance, instituted by the plaintiff in accordance with the provisions of PA 1889, No 243 (CL 1948, § 552.301 *et seq.* [Stat Ann 1957 Rev § 25.211 *et seq.*]). The parties were married in 1944. One child was born of the marriage, and 2 daughters of defendant by a prior marriage were adopted by plaintiff in December, 1953. At the time of the hearing of the case in circuit court the 3 children were with plaintiff, defendant contributing to their support in accordance with court orders.

It appears that during the early years of their married life the parties lived together amicably. Subsequently difficulties arose, plaintiff being dissatisfied with defendant's conduct in certain respects. In the latter part of 1953 the record indicates that there was a reconciliation and the parties made a trip to California, from which they returned in December of that year. Further difficulties then developed, as a result of which defendant refused to occupy the same sleeping room with plaintiff. In March, 1954, an argument developed as a result of plaintiff charging defendant with improper conduct. It is the claim of the plaintiff that defendant lost his temper on that occasion, threatened her with bodily violence, and attempted to strike her, being prevented from so doing by third parties. Thereafter defendant left the home and did not return.

Following the occurrence above mentioned, plaintiff started a suit for separate maintenance, and defendant filed a crossbill asking that the court enter a decree for an absolute divorce. Issues were joined on the pleadings. Prior to trial plaintiff withdrew her bill of complaint, and the court proceeded to hearing on the crossbill. The result was the dismissal of the case.

The bill of complaint in the present suit was filed by plaintiff September 17, 1956. Plaintiff alleged therein that defendant had been guilty of conduct towards her amounting to extreme and repeated cruelty, and that he had failed to adequately support her and the 3 children residing with her. On November 26, 1956, an amended bill of complaint was filed by plaintiff, enlarging on the averments of the original bill with reference to the claim of nonsupport, alleging that plaintiff had contributed approximately $35,000 in furthering the financial interests of the parties, and that defendant had improperly refused to pay certain bills incurred by her for the benefit

of the family. It was further alleged that defendant had undertaken to conceal his assets, and that he had incorporated a business previously carried on in his individual name in an attempt to place assets beyond the reach of plaintiff. She asked that said corporation, Kotcher Tool & Engineering Company, be joined as a party defendant, and restrained from transferring its assets except in the usual course of business and from making payments to defendant other than his regular weekly salary. An order was issued in accordance with the prayer of the amended bill.

Answers were filed to plaintiff's bill of complaint, and defendant Feldman also filed a crossbill asking that the parties be divorced. On the hearing of the cause, which began November 6, 1958, plaintiff was the only witness who testified. In the course of hearing testimony the trial judge questioned her motives in bringing the suit for separate maintenance, concluding, as the record indicates, that plaintiff realized that defendant wished an absolute divorce, and that she might have sued for such relief, or have amended her bill of complaint accordingly, if defendant had been willing to pay the sum of $50,000 to her. Concluding that plaintiff's attitude was such as to indicate that she was not in court with "clean hands," and that, for such reason, she was barred from obtaining relief, an order was entered dismissing her bill of complaint. Defendant had previously, during the course of plaintiff's testimony, withdrawn his crossbill. Claiming that the action of the trial court was not justified by plaintiff's testimony as given prior to the time that the court ended the hearing, she has appealed.

For the purpose of determining plaintiff's motives and general attitude in the case the trial judge interrogated her at some length. The following ex-

cerpts from her testimony fairly suggest the situation:

"*Q.* You want more money for support?

"*A.* Yes.

"*Q.* And you want to be legally separated from your husband?

"*A.* Yes.

"*Q.* But you don't want a divorce?

"*A.* No.

"*Q.* Why don't you want a divorce?

"*A.* I don't know what the future will bring.

"*Q.* What do you mean by that? That there's a possibility that you might reconcile?

"*A.* I don't know.

"*Q.* Then do you think you ought to go ahead with this action until you find out definitely?

"*A.* I think so.

"*Q.* Do you plan to do anything, yourself, to effect a reconciliation?

"*A.* I don't know.

"*Q.* Supposing your husband were ordered to pay you $50,000 would a divorce be all right?

"*A.* I think it might, I don't know.

"*Q.* You recognize that when you ask for separate maintenance or separation, you legally require your husband to support you but he can't remarry. You understand that?

"*A.* Neither can I.

"*Q.* Do you have any desire to remarry?

"*A.* Today, I don't know.

"*Q.* But you feel he does?

"*A.* I think he would, I don't know.

"*Q.* And you are not interested in a divorce unless he comes up with $50,000, is that right?

"*A.* That may be right. * * *

"*The Court:* You just admitted to me about 20 minutes ago that if you could get $50,000 you might be willing to get a divorce instead of separate maintenance. That's what you distinctly told me.

"*A.* We discussed that, but—

"*The Court:* You discussed it?

"*A.* You asked me, and I answered. It was never discussed in court in front of any judge. I've never made that statement to my husband, but to the attorney. We had discussed it with the attorney.

"*The Court:* The point is, that it is a true statement, isn't it?

"*A.* Yes, it is."

Following the testimony quoted the court indicated to counsel that he could see no reason for going on with the case. Reference was also made to the possibility of a reconciliation, plaintiff indicating that she did not know whether such was possible or not, and requesting that the court inquire of defendant as to his attitude. This the court did, and the answer of defendant was an unequivocal denial that there was a chance for reconciliation. The order of dismissal was made without any determination as to plaintiff's claims of cruelty on the part of defendant or his failure to adequately support her and the children. The order rested on the conclusion of the trial judge that plaintiff had not brought her suit in good faith, and that her conduct was such as to bar her from relief.

The situation presented is an unusual one. Plaintiff's testimony is fairly open to the criticism that she failed to answer questions propounded to her with complete frankness. However, bad faith on her part is not established by the fact that she, presumably under the advice of counsel, brought her suit for separate maintenance rather than for an absolute divorce. It was her privilege to take advantage of the provisions of the separate maintenance act, above cited, if she thought it for her advantage to do so. Undoubtedly, and as her testimony indicates, she desired that defendant be required to support her and the children.

Defendant's attitude, as indicated by his acts, was such as to negative the possibility of the parties living together in marital harmony. As plaintiff indicated in her testimony, counsel representing the parties to the cause discussed the case presumably with the not unusual thought in mind of working out a satisfactory agreement if it could be done with the approval of the parties. Plaintiff discussed the matter with her attorney. Bearing in mind that she was desirous of obtaining satisfactory assurance as to her future maintenance and support and that of the 3 children, it is quite probable, had she received such assurance, that she would have consented if so advised by her attorney that her bill of complaint be amended to ask for a decree of divorce. Her testimony may properly be construed as indicating that she was unwilling to do so unless a satisfactory arrangement could be entered into by the parties to the case that would result in affording her financial security. Under the circumstances and in view of the responsibilities resting on her with reference to the support and maintenance of the children, it may not be said that such attitude on her part is indicative of bad faith.

There is nothing in the record to indicate that at the time this case was started by plaintiff she was motivated by a desire to extract from defendant any sum of money, or property, to which she did not believe herself entitled. She is not accused of practicing any deception on the defendant nor is it claimed that she attempted to deceive him in any way. It is apparent also that her willingness, if such there was, to consent to an amendment to her bill of complaint of the nature suggested did not result in any way to her advantage. The conversations between counsel, and between her and her attorney, did not bring about any satisfactory arrangement or agreement. On the hearing in circuit

court the question at issue was her right to the relief sought, namely, separate maintenance.

Apparently counsel for defendant did not seek dismissal of plaintiff's bill of complaint on the ground that her conduct was such as to bar her from equitable relief. Inasmuch as defendant was not in any way prejudiced by her possible, or probable, willingness to amend her bill of complaint to ask for an absolute divorce, if a satisfactory agreement could be made between the parties, he was scarcely in position to raise the question. 19 Am Jur, Equity, § 474, p 328; *Price* v. *Nellist,* 316 Mich 418. See, also, *Loughran* v. *Loughran,* 292 US 216 (54 S Ct 684, 78 L ed 1219).

Counsel for appellant asks that this Court set aside the order entered by the circuit judge and grant to her a decree for separate maintenance. This we may not do. Plaintiff, the only witness examined, apparently had not completed her testimony at the time the hearing was stopped. Her counsel indicated that he had several other witnesses whose testimony he wished to take. Defendant is, of course, entitled to a reasonable opportunity to meet any proofs introduced in support of the averments of the bill of complaint. Under the circumstances, it appearing that the order of dismissal was improvidently entered, the cause must be remanded to circuit court for hearing and determination of the factual matters at issue. An order will accordingly enter setting aside the order from which the appeal has been taken, and remanding the case for further proceedings. Plaintiff may have costs.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.