In the Matter of Michael James KINNEY, Debtor.

**GUARANTY NATIONAL BANK, Plaintiff,**

v.

**Michael James KINNEY, Defendant.**

**Bankruptcy No. 81–1962.
Adv. No. 82–438.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 11, 1985.

---

Edward M. Waller, Jr., Tampa, Fla., for plaintiff.

Domenic L. Massari, III, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint filed by Guaranty National Bank (GNB), which seeks an order from this Court declaring certain debts owed to GNB by the Debtor to be non-dischargeable pursuant to § 523(a)(2)(B) and/or § 523(a)(2)(A) of the Bankruptcy Code. The facts relevant to a resolution of the matter under consideration may be summarized as follows:

Between September 1979 and July 1980, GNB made four loans to the Debtor. The first loan in the amount of $85,000 was made in September, 1979. The second loan was made in December, 1979. The third loan was made in the amount of $35,000 in January, 1980. The last loan in the amount of $100,000 was made in July, 1980 and was made to Renal Care, Inc., a corporation of which the Debtor was the principal. This loan was personally endorsed by the Debtor and his then wife, Margaret Kinney, and was secured by office equipment owned by Renal Care, Inc.

Pursuant to a request by GNB in November, 1980, the Debtor submitted an updated financial statement. The financial statement indicated gross income of approximately $135,000 and net income of approximately $92,000. GNB claims that the financial statement was materially false in that it overstated the Debtor's net income. The Debtor contends that the income figures were only projections, although from the face of the financial statement, the figures appear to be statement of fact.

■ This Court has considered the financial statement together with the record and finds no question but that the financial statement was false. From the evidence presented, it is clear that the Debtor's gross income for the 12 month period preceding the submission of the November 1980 financial statement to GNB was actually somewhere in the neighborhood of $20,000. In fact, the Debtor's tax return for 1980 indicates gross income of only $21,000.

■ Even were this Court to believe the Debtor's claim that the financial statement was meant to be a projection, a claim this Court finds to be without basis, the debts would not be dischargeable if the Debtor intentionally failed to inform GNB of this fact. At best, the income figures on the financial statements were a guess—a guess made and submitted to GNB with the intent to convince GNB that they were fact. The Debtor's poor financial condition at the time he submitted the financial statement, as well as the poor financial performance of his various interests over the preceding years leads this Court to the conclusion that the Debtor intentionally misstated his earnings and he intentionally conjured

them up in order to suit his needs. In any event, this Court finds that the Debtor without doubt intended GNB to use the financial statement as a statement of fact and not as a projection and rely on same in making its decision on the loan transaction. In fact, the Debtor himself admitted that anybody reading the financial statement would think it was a factual statement and not a projection. Based upon the foregoing, this Court finds that the financial statement submitted by the Debtor to GNB was materially false.

Subsequent to receiving the November 1980 financial statement, GNB renewed the $5,800, $35,000 and $100,000 loans. In addition, the $85,000 loan provided that the Bank could either call the loans and demand, at least, reduction of the principal, or demand additional collateral. The Bank's loan officer, who testified at the final evidentiary hearing, testified that an annual income of $75,000 would have been considered the minimum necessary to service the Debtor's outstanding obligations to GNB.

With regard to the $35,000 loan, it should be noted that this loan was secured by stock in various companies. The stocks were held in the name of the Debtor's wife, Margaret Kinney. When GNB received the stock certificates together with the stock powers which would be necessary to transfer the stock should there be a default, the stock powers appeared to be signed by the Debtor's wife. This, however, was not the case. In fact, the Debtor had forged his wife's signature. The Debtor contends that he and his wife regularly signed each others name and that he had consent to do so in this case. This Court considered the testimony presented at the hearing on this matter and finds that the wife never authorized the Debtor to pledge her stock and that she was unaware of his actions until sometime after they had taken place. In addition, it appears that the Debtor forged his wife's signature on the endorsement of the $100,000 note. This was also done without Margaret Kinney's knowledge or approval.

Based on the foregoing, it is clear that when this Bank, or any other lender of money, makes a loan, the primary factors which they consider are the borrower's ability to repay the loan or, in this case, sufficient value of the collateral to satisfy the loan should the borrower be unable to pay and the liquidation of the collateral became necessary.

There is hardly any doubt that the Bank, in this case, relied heavily on the Debtor's financial statement and on the stock pledge. The Plaintiff clearly acted in reliance on the financial statement when it renewed the $100,000, $35,000 and $5,800 loans. GNB, on the basis of the financial statement, did not elect to demand additional collateral on the $85,000 and $35,000 loans nor did it demand quarterly reductions in principal on the $85,000 loan, as it had the right to do. It is also clear that GNB relied on its ability to liquidate the pledged stock in the case of default when it extended the $35,000 loan.

The Debtor contends that the Plaintiff's reliance on the financial statement and on the stock pledge were unreasonable because GNB should have realized that the financial statement was only a projection and not a statement of fact. The Debtor also contends that GNB relied on a number of other considerations—on the Debtor's professional standing as a medical doctor, and not on his actual financial condition. As stated above, this Court does not believe that the financial statement submitted by the Debtor was meant to be taken by GNB only as a projection of possible future earnings. Based on this, this Court is satisfied that GNB's reliance on the financial statement was reasonable. Be that as it may, it is clear that a party need not rely totally upon the debtor's false financial statement in order to prevail on a claim of non-dischargeability under § 523(a)(2)(B). A creditor need only show partial reliance on the debtor's financial statement to preclude discharge under § 523(a)(2)(B). *In re Bonanza & Export, Inc.*, 43 B.R. 570 (Bankr.S.D.Fla.1984); *In*

**352**

re Ebbin, 32 B.R. 936 (Bankr.S.D.N.Y.
1983).

With respect to the stock power, the claim of non-dischargeability, based upon the forged stock pledge, clearly falls under § 523(a)(2)(A).

Sections 523(a)(2)(A) and (a)(2)(B) state:

§ 523. Exceptions to Discharge

(a) A discharge under § 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt

(1) xxx

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing

(i) that is materially false

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive, or

(C) xxx

In order to sustain a claim of non-dischargeability under § 523(a)(2)(A), it is the burden of the Plaintiff to establish the following:

(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representation;

(5) that the creditor sustained the alleged loss and damage as a result of the representations having been made.

Newmark v. National Bank of North America (In re Newmark), 20 B.R. 842 (Bankr.E.D.N.Y.1982); Public Finance Corp. v. Taylor (In re Taylor), 514 F.2d

1370 (9th Cir.1975); Sweet v. Ritter Finance Co. (In re Sweet), 263 F.Supp. 540 (W.D.Va.1967).

Applying the above five-part test, this Court finds that the Debtor's forgery of his wife's name on the stock pledge and the endorsement of the $100,000 loan was a false statement. In addition, it is clear that the Debtor knew of the falsity at the time he submitted the stock pledge and endorsement.

■■■ With respect to the Debtor's intent to deceive, a more difficult issue is presented. To except a debt from discharge under § 523(a)(2)(A), the Debtor's conduct must be intentional, not merely reckless or negligent. C.O.T.C.O. Gasoline, Inv., vs. Jenes (In re Jenes), 18 B.R. 405 (Bankr.S.D.Fla.1981). As a general rule, courts narrowly construe exceptions to discharge against the creditor and in favor of the Debtor. Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Gleason v. Thaw, 236 U.S. 558, 35 S. 287, 59 L.Ed. 717 (1915). Accordingly, the creditor bears the burden of demonstrating that the debt owed to him falls within one of the statutory exceptions. Murphy & Robinson Investment Co. v. Cross (In re Cross), 666 F.2d 873 (5th Cir.1982). While intent may not be presumed, it may be inferred from the "totality of the circumstances". In re Newmark, supra. In re Firestone, 26 B.R. 706 (Bankr.S.D.Fla.1982); Carini v. Matera, 592 F.2d 378 (7th Cir.1979). Based upon the totality of the circumstances in the case, circumstances which include the submission of a false financial statement and failure to inform GNB of the fact that he, and not his wife, had signed the stock pledge and the endorsement of the $100,-000 loan, this Court finds that the Debtor signed his wife's name to the stock power and endorsement and submitted them to the Bank with the intent to deceive the Bank. As stated above, this Court finds that GNB relied on the availability of the stock as collateral when it made the $35,-000 loan. It also relied upon its ability to proceed with collection efforts against the

wife, should there be a default. GNB, of course, now is unable to pursue the former wife of the Debtor.

Inasmuch as GNB is now unable to sell the stock pledged in order to satisfy the loan obligation of this Debtor, this Court finds that GNB has been damaged. Based upon the foregoing, this Court finds that the $35,000 loan is a non-dischargeable obligation pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

■ With respect to the claim based upon § 523(a)(2)(B), this Court, as stated above, finds that the financial statement submitted by the Debtor was a materially false statement regarding the Debtor's financial condition on which GNB reasonably relied. Based upon the totality of the circumstances, this Court also finds that the Debtor submitted the financial statement to GNB with the intent to deceive.

■ Inasmuch as GNB relied upon the financial statement when it received the $100,000, $35,000 and $5,800 loans, those obligations are clearly non-dischargeable. With respect to the $85,000 loan, GNB claims that it relied upon the financial statement when it decided not to demand quarterly reductions in principal as would have been its right under the loan documents. While GNB may have relied on the financial statement to its detriment, it is clear that the Debtor did not obtain the $85,000 loan based upon the financial statement. The $100,000, $35,000 and $5,800 loans, therefore, are non-dischargeable, however, the $85,000 loan is dischargeable. A separate final judgment will be entered in accordance with the foregoing.