**In re Mordechai MANGEL, Debtor.**

**Cecil HOLMES, Plaintiff,**

v.

**Mordechai MANGEL, Defendant.**

**Bankruptcy No. 86–02912–BKC–SMW.**
**Adv. No. 86–0761–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

April 21, 1987.

Ronald J. Cohen, Miami, Fla., for plaintiff.

Ashley L. Diener, North Miami Beach, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon the creditor, Cecil Holmes's, complaint to Determine Dischargeability of a Debt owed by the debtor, Mordechai Mangel, pursuant to 11 U.S.C. sections 523(a)(2), (a)(4) and (a)(6) and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does

hereby make the following Findings of Fact and Conclusions of Law:

When the debtor's Chapter 7 bankruptcy petition was filed listed in his schedule was a $617,000.00 judgment entered in a Florida state court in favor of the creditor. The state court final summary judgment found that the debtor had fraudulently induced the creditor to enter into an agreement whereby the creditor was to deliver 1,234,000 Zimbabwe dollars in exchange for 617,000 United States dollars, the creditor had performed his obligations under the agreement but the debtor had failed to perform his obligations and that a waiver agreement signed by the creditor was executed by the creditor under duress and therefore was of no force and effect. The creditor brings this action pursuant to 11 U.S.C. section 523(a)(2)(A), (a)(4) and (a)(6) seeking to avoid the dischargeability of the state court judgment due to fraud, embezzlement and conversion by the debtor. The debtor contends the state court judgment should be discharged because a previously instituted suit in Israel held that the creditor, by agreement with the debtor, waived all legal claims against the debtor.

The creditor was a resident of Zimbabwe until 1983 when he moved to South Africa bringing with him 1,234,000 Zimbabwe dollars. The creditor believed that the value of the Zimbabwe dollars was questionable and was trying to exchange the Zimbabwe for United States dollars when he was introduced to the debtor. The creditor and the debtor discussed a simultaneous transfer (Simultaneous Transfer) of Zimbabwe for United States dollars and sometime thereafter the two parties scheduled a meeting in Paris, France.

During the Paris meeting, the debtor requested that the creditor provide a sample of the Zimbabwe dollars to show an unnamed source. After the meeting with his source the debtor informed the creditor that the source was not interested in making the exchange. The debtor encouraged the creditor to leave the sample money with the debtor so he could show another source who had the capabilities of making the exchange in Zurich, Switzerland. The creditor was informed that the latter source was a renowned travel agent in Israel and South America and, through him, the debtor could exchange the Zimbabwe for United States dollars with certain airlines in Switzerland.

Upon their arrival in Switzerland, the debtor informed the creditor that he was able to conclude all the arrangements with the airlines for the Simultaneous Transaction. He instructed the creditor to bring as many Zimbabwe dollars as possible to their meeting. Upon the debtor's return from his meeting with the airlines, he informed the creditor that the Simultaneous Transaction was impossible because the airlines would only return United States dollars in installment payments rather than in a lump sum. Due to the debtor's credentials and the recommendations of others, and after much encouragement from the debtor, the creditor gave the debtor a total of 1,234,000 Zimbabwe dollars and entered into a written agreement (the Agreement) with the debtor requiring the debtor to make six payments to the creditor over six weeks.

The debtor made no payments as required by the Agreement. When the creditor realized that the debtor was not fulfilling his obligations under the Agreement, he contacted the debtor several times and obtained the debtor's promise to fulfill his obligations under the terms of the Agreement.

Over the next several months, the creditor made numerous trips to the United States, Europe and Israel, endeavoring to secure payments from the debtor. The debtor invited the creditor to meet him in various cities in these countries, where the debtor promised to make payment or supply collateral. On each occasion, the debtor either did not arrive or made excuses as to the whereabouts of the payments and collateral.

The creditor, frustrated with his attempts to recover his money from the debtor, filed a breach of contract suit in Israel. While the Israeli suit was pending the creditor devised a plan involving an agent (the Agent) and the Swiss police by which he would obtain 740,000 of the 1,234,000 Zim-

babwe dollars originally given to the debtor. The plan was implemented by having the creditor's agent contact the debtor to make an exchange of United States for Zimbabwe dollars. The debtor and the agent met to make the exchange at the debtor's bank in Switzerland where the debtor was arrested by the Swiss police on the basis of a complaint instituted by the creditor. The Swiss police held the creditor's money (Seized Money) but needed to have the debtor sign a release because the money was in the bank under the debtor's name. The debtor admitted that the money in his account belonged to the creditor and agreed to sign the release. However, the debtor departed the country before releasing the creditor's money and as a result, the Seized Money remained under attachment in Switzerland.

The creditor eventually located the debtor and he agreed to sign a release of the Seized Money in Switzerland if the creditor would agree to waive his legal claims against the debtor plus pay the debtor 31,-000 United States dollars for the debtor's miscellaneous expenses. The creditor and debtor signed the waiver in Israel and traveled to Switzerland where the creditor acquired possession of the Seized Money. Meanwhile, in Israel, the creditor obtained an interim attachment of the 31,000 United States dollars being held in an Israeli bank. However, due to a translational error in the creditor's affidavit, the Israeli court cancelled the attachment which allowed the debtor to remove, and permanently retain, the money from the Israeli bank. Based upon the affidavit's translational errors, the Israeli court found that the creditor was not constrained to sign the settlement agreement. When the creditor satisfactorily explained the mistake in the affidavit to a court appointed Israeli police investigator, the debtor had absconded with the money making the subject of attachment moot and useless for the creditor to pursue.

The debtor's attorney argues that this Israeli judgment should be the one relied upon by the Court and therefore would have this Court rule in the debtor's favor. However, as the facts indicate, the Israeli court based its decision that the Settlement Agreement was valid and not signed under duress presuming that the creditor had lied in his affidavit. Being that such a presumption was later determined to be incorrect, the Israeli court's factual findings regarding the duress issue can no longer support the debtor's argument.

During the pending Israeli proceedings, but before a final judgment, the creditor filed a breach of contract and fraud claim in a Florida state court. The Florida state court entered a summary judgment for $617,000.00 in favor of the creditor after the debtor and his counsel failed to appear to defend a motion for summary judgment. The state court record indicates that the debtor was represented by an attorney, participated in pretrial discovery and motions, and was given notice of motions and hearings in the state court suit. The debtor, in January, 1987, withdrew his appeal of the state court judgment after choosing to litigate this adversary in bankruptcy court. Subsequent to the Florida state court judgment, the Israeli court found that the waiver executed by the creditor, relinquishing his right to sue the debtor, was valid and dismissed the breach of contract suit. According to the creditor's attorney's affidavit the Israeli court judgment is currently pending appeal in Israel.

## PRELIMINARY ISSUES

Two preliminary issues are before this Court. The first is whether the theory of "clean hands," as advanced by the debtor, bars the Court from entertaining this action. The second is whether this Court, under the principles of international comity, should afford recognition to the Florida or Israeli judgment.

The debtor argues that this Court, as a court of equity, should not entertain this case due to the creditor's unclean hands. The debtor alleges that the creditor unlawfully took the Zimbabwe dollars from Zimbabwe and, therefore, the Swiss contract is based on illegal tender making the contract itself illegal. The debtor is confusing the issues. For the

"clean hands" doctrine to apply, there must be a connection between the creditor's conduct and the matter in which he seeks relief. The creditor's wrongdoing in the course of a transaction between him and a third person not a party to the suit does not deny him relief. In *National Bank & Loan Co. of Watertown v. Petrie*, 189 U.S. 423, 425, 23 S.Ct. 512, 513, 47 L.Ed. 879, 880 (1903), the United States Supreme Court ruled that illegality constitutes no defense when merely collateral to the cause of action sued upon. In the present action, the illegality of the removal of the money was merely collateral to the breach of contract; it is a matter between the creditor and Zimbabwe.

■■■ The real issue is whether a valid contract to exchange money in Switzerland is enforceable in this Court even though the money was illegally taken out of Zimbabwe. The validity of a contract is determined by the law of the place where the contract is made. *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293, 1295 (5th Cir.1972). The debtor has not provided this Court with any Swiss law which prohibits the exchange of Zimbabwe for United States dollars nor has this Court's independent research revealed any such law. Additionally, the unrebutted testimony of the creditor's witness was to the effect that an exchange of the Zimbabwe for United States dollars in Switzerland was lawful. In *Loughran v. Loughran*, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219 (1934), Justice Brandeis stated: "Courts grant relief against present wrongs and to enforce an existing right, although the property involved was acquired by some past illegal act." *Loughran*, 292 U.S. at 228, 54 S.Ct. at 689. This Court finds that even if the creditor illegally took the money out of Zimbabwe, the contract, as executed in Switzerland, was legal and, therefore, the "clean hands doctrine" is inapplicable to the present case.

■■■ The second preliminary issue is which of the two conflicting judgments this Court should adopt: the Florida state court judgment awarding the creditor 617,000 United States dollars or the Israeli court judgment in favor of the debtor that is presently on appeal in Israel. Although the creditor instituted a breach of contract suit in Israel before doing so in Florida, two courts having concurrent jurisdiction may proceed forward with litigation at least until a judgment is reached in one of the courts. Thereafter, the parties may plead *res judicata* in the suit still pending. *Laker Airways v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926–27 (D.C.Cir. 1984). *See also, Strode Publishers, Inc. v. Holtz*, 665 F.2d 333, 335 (11th Cir.1982); *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224 (6th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391 (5th Cir.1981); and *O'hare International Bank v. Lambert*, 459 F.2d 328 (5th Cir.1972). Sometimes, as found in the instant case, "the second court does not give preclusive effect to the judgment of the first court" which leaves the third court faced with conflicting judgments from the first two courts. *Americana Fabrics, Inc. v. L & L Textiles Inc.*, 754 F.2d 1524, 1529–30 (9th Cir.1985); *Merrill Lynch*, 637 F.2d at 395, footnote 5. The general rule is that the second court judgment, whether or not it is the correct one, is the judgment binding on the third court. *Americana Fabrics, Inc.*, 754 F.2d at 1529–30 and *Laker Airways*, 731 F.2d at 929. However, when a foreign judgment is one of the conflicting judgments the principles of international comity permits permissive rather than mandatory recognition of a foreign judgment by the court. *Cunard Steamship Co. v. Salen Reefer Services AB*, 773 F.2d 452 (1985). *See also, Somportex, Ltd v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir.1971). It is not mandatory recognition because comity itself is discretionary recognition of foreign judgments and a mandatory rule would strip a court of its discretion in matters of comity.

■■■ In *Hilton v. Guyot*, 159 U.S. 113, 40 L.Ed. 95, 16 S.Ct. 139 (1895), the Supreme Court described international comity as:

neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. But it is

the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *Guyot,* 159 U.S. at 163, 164, 40 L.Ed. at 108, 16 S.Ct. at 143.

Additionally, comity need not be afforded if the enforcement of the foreign judgment would frustrate or prejudice the significant public policies of the domestic forum. *See Hilton v. Guyot,* 159 U.S. 113, 164–65, 16 S.Ct. 139, 143–44, 40 L.Ed. 95 (1895); *Cunard Steamship,* 773 F.2d at 453, 457; *Laker Airways,* 731 F.2d at 915, 929–31, 937; and *Tahan v. Hodgson,* 662 F.2d 862, 864 (D.C.Cir.1981).

■ Acknowledging the foregoing principles of international law, this Court finds that the unique circumstances of the instant case warrants exercising its discretion to find the Florida state court judgment to be valid and therefore the binding decision. Ruling that the Florida judgment is binding comports with the basic policy behind *res judicata* to put an end to the chain of relitigation. *Americana Fabrics,* 754 F.2d 1524, 1530 (9th Cir.1985).

This Court bases its decision on several factors, including the following. The debtor instituted his bankruptcy action in the United States and, therefore, has purposefully availed himself of the laws of the United States by seeking protection from his creditors to obtain a fresh start. The debtor could have initiated his bankruptcy in Israel where he is also a resident. Furthermore, the debtor was fully represented in the Florida court in that, as a resident of Florida, he hired counsel to appear in his state court action and conducted substantial pretrial discovery. He had an opportunity to defend himself against the summary judgment, but to his detriment, did not. The creditor, based on his tireless pursuit of the debtor throughout the world, justifiably filed suit against the debtor in both the United States and Israel. This Court does not find, as suggested by the debtor, that the filing of the suit in the United

States was motivated by the creditor for the purpose of finding the most favorable forum or to harass the debtor. Furthermore, the Florida judgment is final whereas the Israeli action has been pending since 1983 and is presently under appeal. As previously stated, the policy behind *res judicata* is to put an end to the chain of relitigation and the Court finds that this decision accomplishes the desired result. The Israeli judgment conflicts with the findings of the Florida state court, is prejudicial and contrary to the interests of the Florida state court and, therefore, this Court, sitting within the same jurisdiction, finds the Florida state court judgment to be binding.

## NONDISCHARGEABILITY OF DEBT

In accordance with the principles enunciated in *Brown v. Felson* and based upon the testimony and evidence presented, this Court concurs and thereby adopts the following as found by the state court: that the debtor breached the contract for the exchange of Zimbabwe for United States dollars made with the creditor; that the debtor fraudulently induced the creditor to enter into the contract; and that the waiver agreement signed by the creditor to receive the money from the Swiss bank was executed by the creditor under duress and therefore is of no force and effect. *See Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and *In re Gelman,* 47 B.R. 735, 737 (Bankr.S.D.1985).

■ The creditor asserts that the state court judgment is nondischargeable under 11 U.S.C. sections 523(a)(2)(A), (a)(4) and (a)(6). As a bankruptcy court, this Court is not bound by the findings found in a state court judgment when determining the dischargeability of a debt under 11 U.S.C. section 523. *Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). This Court must, therefore, determine whether the state court judgment is nondischargeable under 11 U.S.C. section 523.

The creditor claims that the state court judgment is nondischargeable under 11 U.S.C. section 523(a)(2)(A) which states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— (2) for money, ..., to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Actual fraud is established by a showing of the following five elements: that representations were made by the debtor; that the representations were knowingly false; that the debtor made them with the intent to deceive the creditor; that the creditor reasonably relied on the representations; and, that the creditor suffered resultant damages from the misrepresentations. *In the Matter of Carpenter,* 53 B.R. 724, 729 (Bankr.N.D.Ga.1985). *See also, In re Goldstein,* 66 B.R. 909, 920 (Bankr.W.D.Pa.1986).

In the case at bar, the debtor made a knowingly false representation to the creditor when he stated that a transaction to exchange Zimbabwe dollars with the airlines was definite and complete and when he agreed, in the signed Agreement, to repay the creditor in several installments. Even if there was an unsuccessful airlines transaction, the debtor made false representations to the creditor when he subsequently promised to meet the creditor to return the creditor's money or to supply the creditor with collateral for the money the debtor had taken. The debtor held himself out to possess superior knowledge with which to effectuate the airlines transaction and the creditor had no knowledge nor accessibility to such knowledge. Based upon the foregoing facts, this Court finds the debtor made a knowingly false representation to the creditor. *See generally, In re Firestone,* 26 B.R. 706, 716 (Bankr.S. D.Fla.1982).

The debtor made the aforesaid false representations with the intent to deceive the creditor. Intent may not be presumed, but it may be inferred from the "totality of the circumstances." *In re Firestone,* 26 B.R. 706, 716 (Bankr.S.D.Fla. 1982). *See also, In the Matter of Kinney,*

54 B.R. 348, 352 (Bankr.M.D.Fla.1985). The debtor failed to make a single installment payment to the creditor, he was unavailable to the creditor to return the creditor's money and, although he made numerous promises that he would effectuate a money exchange or repay the creditor, the debtor instead kept the creditor's money and absconded with it throughout the world. From the totality of the circumstances, the Court finds the existence of the requisite intent to deceive the creditor. The creditor reasonably relied on the debtor's representations and was damaged by these misrepresentations. The creditor was given excellent references by the debtor's associates as to the debtor's business capabilities, plus the debtor professed to be a prominent and wealthy businessman, therefore, the creditor had no reason not to trust the debtor. Further, the debtor was very persuasive in encouraging the creditor to turn over the Zimbabwe dollars. Based on the foregoing, this Court finds that the creditor satisfied the requisite elements of fraud and, therefore, the state court judgment is nondischargeable under 11 U.S.C. section 523(a)(2)(A).

In addition, the creditor claims that the state court judgment is nondischargeable under 11 U.S.C. section 523(a)(4) which states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— (4) for ... embezzlement, or larceny.

The debtor may not receive a discharge from any debt arising from an embezzlement. "Embezzlement is the fraudulent appropriation of the property of another which has been entrusted to the actor, without consent of the owner or bailor." *In re Rebhan,* 45 Bankr. 609, 614 (Bankr.S. D.Fla.1985). *See also,* FLA.STAT. section 812.014(1)(b) (1983); *In re Beasley,* 62 B.R. 653, 655 (Bankr.W.D.Mo.1986); and *In re Dohm,* 19 B.R. 134, 138 (Bankr.N.D.Ill. 1982).

The creditor entrusted his 1,234,000 Zimbabwe dollars to the debtor's care for the sole purpose of exchanging the money for

United States dollars with an airlines. However, when the debtor attempted to sell the Zimbabwe dollars to the Agent, deposited the Zimbabwe dollars into a bank account accessible only to himself and failed to return the money upon the creditor's request, he fraudulently appropriated the money without the consent of the creditor. Therefore, the Court finds that the debtor committed embezzlement and the state court judgment is nondischargeable under 11 U.S.C. section 523(a)(4).

Finally, the creditor claims that the state court judgment is nondischargeable under 11 U.S.C. section 523(a)(6) which states:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The legislative history of section 523(a)(6) clearly states that a "willful and malicious injury" includes willful and malicious conversion. *In the Matter of Held*, 34 B.R. 151, 154 (Bankr.M.D.Fla.1983). *See also*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Florida case law defines conversion as an unauthorized act which wrongfully and permanently deprives the owner of his property for an indefinite period of time. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1161 (Fla. 3d DCA 1984). Conversion is "willful and malicious," even absent proof of a specific intent to injure, if it produces harm and is without just cause or excuse. *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986). The creditor was harmed by the debtor, without just cause or excuse, when the debtor wrongfully deprived the creditor of the Zimbabwe dollars for an indefinite period of time after several attempts to exchange the money had failed and then the debtor refused to return the money at the creditor's request. The Court finds that the debtor willfully and maliciously converted the money to his own use and, therefore, the state court

judgment is nondischargeable under 11 U.S.C. 523(a)(6).

In summary, the Court finds the Florida state court judgment to be nondischargeable under 11 U.S.C. sections 523(a)(2)(A), (a)(4) and (a)(6). A separate Final Judgment of even date has been entered in conformity herewith.