**In re Marian Jo WEINBERG, Debtor.**

**ALCO MARINE AGENTS, INC., PENSION PLAN & TRUST, Plaintiff,**

v.

**Marian Jo WEINBERG, Defendant.**

**Bankruptcy No. 87–00870–BKC–SMW.**
**Adv. No. 87–0286–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 28, 1987.

James N. Hurley, Miami, Fla., for creditor.

Evan J. Gonshak, Miami, Fla., for debtor.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon a complaint to Determine Dischargeability of a Debt owed by the debtor, pursuant to 11 U.S.C. § 523(a)(2)(A) and the Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law:

In February, 1981 Marian Jo Weinberg (the "debtor") and Scott Gordon ("Gordon"), a third party, were approached by Robert Campbell ("Campbell"), who requested that the debtor and Gordon, take title to a vessel Campbell purportedly owned. Campbell wanted to temporarily place his boat in the debtor and Gordon's names for tax purposes until April 20, 1981, at which time the title to the boat would be transferred back to Campbell and the debtor and Gordon would be compensated for their efforts. The debtor agreed to the transfer of title and together with Gordon and Campbell went to the Coast Guard Office in Miami where the transfer was finalized. The debtor did not review the vessel's bill of sale to verify that Campbell held title but simply signed the papers at the request and direction of Campbell.

Subsequently, Campbell requested, and the debtor and Gordon agreed, to obtain a loan on the vessel. The debtor and Gordon consulted an attorney who advised them that the transfer of the boat's title appeared proper and that they could transact the loan. For their protection, however, the attorney had the debtor and Gordon enter into an Indemnification Agreement with Campbell to hold them harmless against any claims arising from the transaction.

The negotiations for the loan occurred between Campbell, Russell P. McCain (the "creditor"), substituted as party plaintiff for Alco Marine Agents by order of this Court, and the creditor's attorney, with the debtor and Gordon being informally consulted about the collateral and other miscellaneous matters. The creditor had experienced prior dealings with Campbell where Campbell attempted to sell him stolen items. According to the creditor's testimony, he was also aware that the loan money would go directly to Campbell, and that Campbell was a guarantor on a $20,000.00 promissory note executed in connection with the loan.

Upon the advise of Campbell, the debtor and Gordon listed the boat's location as the debtor's address on the loan documents at the time they executed the note. Subsequently, as agreed among the parties, the debtor received from the creditor a check for $8,500.00 and $11,000.00 in cash. Campbell was immediately given part of the money and the rest was placed in a restricted bank account in the names of the debtor and Gordon. The money was to be held in this account by the debtor and Gordon until their names were removed from both the note and the vessel's title.

In March, 1981 the debtor's attorney received papers purporting to transfer title of the boat back to Campbell and a new promissory note substituting Campbell as the sole obligor. Thereafter, the debtor's attorney advised the debtor and Gordon that their names had been removed from the promissory note and that they could release the balance of the money to Campbell. On this advice, the debtor and Gordon released the remaining $10,000.00 to Campbell. The debtor, believing that she had been discharged of the debt, did not keep track of the boat's whereabouts or the loan proceeds. The creditor did not notify the debtor of the loan's maturity on August 13, 1981, nor did the creditor attempt to seize the vessel while it was docked in Miami. However, in January, 1983 the creditor instituted a suit in a Florida state court against the debtor to obtain payment of the loan. Realizing that something had gone wrong with respect to the collateral, the debtor returned to the Coast Guard office to discover that she was still listed as the vessel's owner. Upon learning this, the debtor began searching for the vessel and

found it in Virginia where she instituted a lawsuit to regain possession. However, apparently Campbell had given the debtor a fraudulent bill of sale and therefore a Virginia federal court determined that the debtor's title was a forgery and would not release the vessel.

Subsequently, a judgment was entered in the Florida state court in favor of the creditor. The state court judgment found that the debtor and Gordon were liable on the $20,000.00 promissory note that secured the personal loan extended by the creditor, however, no determination was made by the jury as to the issue of fraud. The creditor brings this action pursuant to 11 U.S.C. § 523(a)(2)(A) seeking to exempt from discharge the state court judgment due to the debtor's misrepresentations or actual fraud.

■ Under 11 U.S.C. § 523(a)(2)(A) a debt will be excepted from discharge when a debtor makes a false representation when incurring a debt. In determining whether a particular debt is excepted from discharge, 11 U.S.C. § 523 should be strictly construed against the objecting creditor, and the burden is on the creditor to prove the exception. *Hunter v. Schweig (In Re Hunter)* 780 F.2d 1577 (11th Cir.1986). The bankruptcy court is not bound by a state court's findings when determining the dischargeability of a debt under 11 U.S.C. § 523. *Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). This Court, therefore, must determine whether the state court judgment is nondischargeable under 11 U.S.C. § 523.

■ 11 U.S.C. § 523(a)(2)(A) states:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt–(2) for money, ..., to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To bar a discharge of a debt for a false representation or fraud the creditor must show the following: that the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. *Hunter,* 780 F.2d at 1579; *In re Mangel,* 72 B.R. 516, 522 (Bankr.S.D. Fla.1987); *In the Matter of Carpenter,* 53 B.R. 724, 729 (Bankr.N.D.Ga.1985).

■ 11 U.S.C. § 523(a)(2)(A) requires "the type of fraud which, in fact, involves moral turpitude or intentional wrong and fraud implied in law which may exist without imputation of bad faith or immorality is insufficient." *Hunter,* 780 F.2d at 1579; *Everman v. Kiester (In the Matter of Everman),* 72 B.R. 687, 690 (Bankr.M.D.Fla. 1987). Based on the facts presented, the Court finds that there is insufficient evidence that the debtor made a "knowingly false" representation to the creditor when obtaining the loan for Campbell.

The creditor argues that the debtor misrepresented that she owned the vessel. However, the facts indicate that the debtor believed she had legal title to the vessel and was thereby the true legal owner of the vessel during the negotiation of the loan. Several steps taken by the debtor, such as, requiring Campbell sign an indemnification agreement and her attempt to obtain the release of the boat from a Virginia court support the debtor's contention that she believed she owned the vessel. There is no evidence showing that the debtor knew that the title transferred to her was fraudulent. In fact, Campbell prepared most of the paperwork on the transfer and the loan and there is no indication that the debtor at any time knew that the bill of sale was a forgery. Additionally, the debtor believed that the title she received from Campbell was legally valid since the Coast Guard in Miami made the transfer from Campbell to the debtor and Gordon with no difficulty. Finally, the fact that the debtor opened a restricted bank account with some of the loan money and conditioned the release of the money to Campbell upon the debtor being absolved of her liability under the note and the fact that debtor only released the money when she was informed that title to the vessel

had actually been transferred back to Campbell are also indicia that there was no fraudulent intent on the debtor's part to deceive the creditor.

The creditor further contends that the debtor made a misrepresentation, in that she had no intention to repay the loan nor did she advise the creditor that the boat would revert back to Campbell before the loan matured. However, it is apparent that the debtor believed that the debt was amply secured by the vessel. Also, the creditor was aware that the money was going directly to Campbell who was also a guarantor on the note. Furthermore, when a creditor does not specifically inquire of a debtor or the collateral, bankruptcy law does not mandate or require that a debtor voluntarily disclose information concerning the collateral. *Hunter*, 780 F.2d at 1580.

Based upon the foregoing facts, this Court finds that there was no "actual fraud" present because the debtor did not make any "knowingly false" representation to the creditor nor did the debtor make any representations with the intent to deceive the creditor, *Hunter*, 780 F.2d 1577; *Mangel*, 72 B.R. at 522; *In re Firestone*, 26 B.R. 706, 716 (Bankr.S.D.Fla.1982).

As previously discussed, the creditor must show that he reasonably relied on the representations made to him to prevail under 11 U.S.C. § 523(a)(2)(A). *Mangel*, 72 B.R. at 522. The creditor has not met this burden. The facts indicate that the creditor suspected or knew that Campbell was an untrustworthy businessman but, nevertheless, the creditor authorized a loan to two individuals who admitted that they were giving the money directly to Campbell. Although the creditor contends he made the loan to the debtor and Gordon based upon their purported title ownership of the boat, such reliance is suspicious given the fact that the entire transaction was orchestrated by Campbell. Furthermore, the creditor and his attorney always dealt with Campbell in negotiating the loan except for the day of the closing when the debtor and Gordon signed the papers. Therefore, this Court finds that the credi-

tor did not reasonably rely on the debtor's representations.

In summary, the Court finds, pursuant to 11 U.S.C. § 523(a)(2)(A), that the debtor did not act with the purpose and intention of deceiving the creditor and that the creditor did not reasonably rely on the representations made to him by the debtor. Therefore, the Florida state court judgment is dischargeable under 11 U.S.C. § 523(a)(2)(A).

A separate Final Judgment of even date has been entered in conformity herewith.