**AEROPLATE CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 05–736C.

United States Court of Federal Claims.

July 15, 2005.

William L. Bruckner, San Diego, CA, for plaintiff.

William G. Kanellis, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## MEMORANDUM OPINION AND ORDER FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

CHRISTINE O. C. MILLER, Judge.

Before the court after argument on July 14, 2005, is plaintiff's application for a temporary restraining order and preliminary injunction in this post-award bid protest. At issue is whether the Departments of the Army and Air Force, National Guard Bureau, U.S. Property and Fiscal Officer for California, Fresno, California (the "FANG"), acted arbitrarily or capriciously by rejecting plaintiff's apparent low bid as nonresponsive because a corporate seal was not affixed to an otherwise facially valid bid bond and because the surety communicated to the contract administrator after the bid opening that the surety would not guarantee the bid amount.

According to the complaint filed on July 8, 2005, Aeroplate Corporation ("plaintiff") timely submitted on June 2, 2005, a sealed bid in the amount of $7.3 million for Solicitation No. W912LA–05–B–0001 to complete repair and construction work on a maintenance hanger for the Fresno Air National Guard Station in Fresno, California. Plaintiff submitted one of five bids, and it was the apparent lowest bidder.

By letter dated June 29, 2005, Lt. Col. Eric H. McDonald, Chief Purchasing and Contracting Division, informed plaintiff that the California Army National Guard was rejecting plaintiff's bid because it submitted an "invalid" bid bond. Lt. Col. McDonald explained that the bond was "executed improperly" because the bond submitted lacked a corporate seal affixed on the front of the document as required by Instruction number 5, Standard Form 2–4 (Rev.1–90). Lt. Col. McDonald also explained that, on June 23, 2005, the Government was notified by the surety, Arch Insurance Company ("Arch"), that it would not, and did not, authorize a bond for the amount of the bid; it only authorized, according to Lt. Col. McDonald,

an amount of $5.0 million, not to exceed $5.5 million. As a consequence, Lt. Col. Mc-Donald's letter states that "it is not clear to the government that the surety feels liable for the penal amount of the bond."

Plaintiff contends that the FANG's decision to reject plaintiff's bid as nonresponsive is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Plaintiff seeks a temporary restraining order and preliminary injunction to enjoin defendant from proceeding with the contract until this court may have opportunity to render decision on its complaint for declaratory and permanent injunctive relief. For the following reasons, this court grants interim injunctive relief.

## DISCUSSION

■ On request for preliminary injunctive relief, the court must weight the following four factors: "(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties." *U.S. Ass'n of Importers of Textiles & Apparel v. United States,* 413 F.3d 1344, 1347–48 (Fed.Cir.2005). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993).

■ In the context of a bid protest, success on the merits would require plaintiff to prove that the contracting agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A) (2000); 28 U.S.C. § 1491(b)(4). 48 C.F.R. (FAR) § 52.228–1(a)–(b) (2000), "Bid Guarantees," provides, in pertinent part:

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

Defendant's contention that the failure to affix the corporate seal to the bid bond renders the bid nonresponsive falls within this court's discussion of the law of bid bonds in *Hawaiian Dredging Construction Co. v. United States,* 59 Fed.Cl. 305, 316 (2004) (ruling that contracting officer's rejection of bid because bid bond's authenticating documents lacked original signatures was contrary to law where surety bound itself to obligations of bond). *Hawaiian Dredging* stands for the proposition that certain technical deficiencies do not affect the validity of the bid bond. *See also Skytech Aero, Inc. v. United States,* 26 Cl.Ct. 251, 254 (1992) ("Moreover, the responsiveness of a bid is not affected by the bidder's failure to affix its corporate seal to the bid."); *Noslot Pest Control, Inc.,* 68 Comp. Gen. 396, B–229555, 88–1 CPD § 259, at 398 ("The absence of corporate seals from the bid or bid bond does not make the bids nonresponsive since evidence of a signer's authority to bind the bidding company may be furnished after bid opening."). Defense counsel concedes that the failure to affix a corporate seal does not invalidate the bid bond.

Defendant urges that the FANG's determination of nonresponsiveness was reasonable because the agency received a communication from the surety that rendered the bid bond invalid. In defending the agency's statement that it was not clear that the surety "feels liable" for the bond, defendant proffers a June 23, 2005 email from Susan D. Neff, counsel for Arch, which begins: "I have made some revisions to your summary. . . ." The body of the transmission ("the summary") states, in part, that Arch authorized its agent, Willis Risk & Insurance ("Willis"),

to approve a bond in the amount of $5.0 million, not to exceed $5.5 million. The summary then describes circumstances of "incorrect[ ] communicat[ions,]," a "false sense of approval[,]" and an unauthorized last-minute approval of a much higher bid bond by an agent of Willis.

After submitting the bid bond, according to this summary, "Arch instructed Willis for [plaintiff] to withdraw its bid. Instead, at [plaintiff's] insistence, a re-evaluation of [plaintiff's] financial situation was conducted by Arch[.]" The summary concludes that Arch continues to urge withdrawal of the bid and that it "does not intend to issue Performance & Payment Bonds[.]" [1]

The parties were afforded several days after plaintiff's application was heard on July 11, 2005, to submit a partial administrative record and additional documents. Although defendant indicates that other documents will be forthcoming, the request for interim injunctive relief is ripe for a ruling. The record before the court establishes that plaintiff, the apparent low bidder, submitted a facially valid bid bond. Prior to award of the contract, the agency received information from the surety that the surety would be unwilling to issue the bonds as required. Without making inquiry to the bidder, the agency rejected the bid as nonresponsive due to a concern about the validity of the guarantee.

The FANG did not act unreasonably to question the absence of a corporate seal, although its rejection of the bid on that basis was not reasonable. Nor was the concern about the validity of the guarantee other than important and legitimate. However, the FAR has a procedure that adequately protects the Government's interest. FAR § 52.228–1(d) provides: "If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within

10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default." Ms. Neff's June 23 email informed the FANG that Arch conducted the reevaluation of plaintiff's financial situation on June 21, 2005, and that, on the following day, Arch decided that plaintiff's "financial situation did not support issuing the final bonds."

FAR § 52.228–1(d) enables a contracting officer who has reason to doubt receipt of executed bonds, and indeed any other contract document, after receipt of a facially valid firm commitment, to avoid any potential problems through a default termination.[2] Were an agency authorized to reject as nonresponsive a bid because of these concerns, then the facial validity of a bid bond would be rendered meaningless whenever an agency has cause for concern, or speculates about a concern.

As a consequence, plaintiff has demonstrated a likelihood of success on the merits. Because the mobilization by awardee will create a justification to deny permanent injunctive relief, plaintiff also has shown immediate and irreparable harm to it unless interim injunctive relief is granted.

Plaintiff also has shown that the harm it will suffer if this court denies an interim injunction is greater than the harm that the Government will suffer if this relief were declined. Although the contracting agency is anxious to proceed, the maximum four-week delay to complete this proceeding and enter a final order is not undue. As plaintiff points out, a letter dated June 23, 2005, from Lt. Col. McDonald to plaintiff asked the low bidders to "extend their bid prices 30 days from the current expiration date of July 2, 2005, to August 2, 2005." That such a delay was considered by the contracting agency in June is inconsistent with the claimed urgency at this time.

---

1. Lt. Col. McDonald's Memorandum for Record dated June 29, 2005, memorializes his Determination and Findings. It tracks the Neff summary on point, but embellishes it with the as-yet unsubstantiated assertion that Arch instructed plaintiff to withdraw its bid.

2. The record developed so far does not contain any document (or sworn statement) to show that Arch withdrew its bid bond or that Arch instructed plaintiff to withdraw its bid. Ms. Neff's June 23, 2005 email states only: "Arch instructed Willis [Arch's agent] for Aeroplate to withdraw its bid. . . ."

Finally, the public interest will be served by granting plaintiff's application for a temporary restraining order and preliminary injunction because the certainty of surety commitments would be compromised, under the scenario presented thus far, if injunctive relief were denied.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant, through the Departments of the Army and the Air Force National Guard Bureau, its officers, agents, employees, and all other persons acting in connection therewith, shall not issue a notice to proceed to R.A. Burch Construction, Inc., or otherwise initiate performance of Contract No. W912LA–05–C–0007 Repair/Construction Maintenance Hanger & Shops, Fresno Air National Guard Station, Fresno, CA, pending the earlier of entry of an order on the parties' cross-motions for judgment on the administrative record or August 8, 2005. Pursuant to RCFC 7.2(a), briefing shall be expedited, and service of all briefs shall be made by overnight delivery, with a courtesy copy to chambers.

2. Pursuant to RCFC 65(c), plaintiff shall submit to the Clerk of the Court by July 20, 2005, a bond in the amount of $2,000.00. The bond shall be issued by a surety authorized by the United States Department of the Treasury. Information may be obtained by contacting the Chief Deputy Clerk of the Court at 202/357–6418 or 202/357–6406.

3. By July 22, 2005, plaintiff shall file its motion for judgment on the Administrative Record.

4. By July 28, 2005, defendant shall file its response and cross-motion.

5. Any reply shall be filed by August 2, 2005.

6. Argument shall be held at 4:00 p.m. on Wednesday, August 3, 2005, in the Howard T. Markey National Courts Building.

7. A copy of this order was transmitted to counsel this date by facsimile transmission.