**AEROPLATE CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 05–736C.

United States Court of Federal Claims.

June 14, 2006.

William L. Bruckner, San Diego, CA, for plaintiff.

William G. Kanellis, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Major Timothy Ryan, Office of the Chief Counsel, National Guard Bureau, of counsel.

### *MEMORANDUM OPINION AND FINAL ORDER*

CHRISTINE O.C. MILLER, Judge.

May 10, 2006 marked the conclusion of a three-day trial on the issue of the alleged

unclean hands of Aeroplate Corporation ("plaintiff"), held at Navy–Marine Corps Trial Judiciary Western Judicial Circuit in San Diego, California.[1] Defendant alleged that plaintiff's unclean hands should prevent it from pressing its action for injunctive relief to halt the award of Contract No. W912LA–05–C–0007 Repair/Construction Maintenance Hanger & Shops, Fresno Air National Guard Station, Fresno, CA. At the conclusion of trial, plaintiff's counsel waived his right to closing argument. The court asked several questions of both counsel before making a bench ruling. In its bench ruling the court determined that (1) plaintiff's conduct did not constitute unclean hands and (2) defendant had failed to justify its belated attempts to supplement the record, and the evidence sought to be introduced, in any event, would have had no impact on the ultimate finding that plaintiff did not act with unclean hands. This final order complements the bench ruling; to the extent of any inconsistency, this order governs.[2]

### 1. The allegation of unclean hands

■ The doctrine of unclean hands "prevents a wrongdoer from succeeding in a court of equity." *Travelers Indem. Co. v. United States*, 16 Cl.Ct. 142, 155 (1988); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) ("[H]e who comes into equity must come with clean hands."). While no requirement exists that "those asserting equitable defenses shall have led blameless lives," it is necessary "that they 'shall have acted fairly and without fraud or deceit as to the controversy in issue.'" *Travelers Indem.*, 16 Cl.Ct. at 155 (quoting *Precision Instrument Mfg.*, 324 U.S. at 814–15, 65 S.Ct. 993); *see also Loughran v. Loughran*, 292 U.S. 216, 229, 54 S.Ct. 684, 78 L.Ed. 1219 (1934) ("Equity does not demand that its suitors shall have led blameless lives.").

■ Mary C. Williams, Chief Executive Officer of Aeroplate, and her husband, William F. Williams, a former employee of Aeroplate, did not lead "blameless lives" with respect to their pursuit of the subject contract award. They aggressively sought bid bond approval from Arch Insurance Group ("Arch"). However, their behavior does not brand plaintiff as acting with unclean hands. The only dubious behavior brought to light during the proceeding was that of the employees of the surety's broker, Willis Risk and Insurance Services of San Diego ("Willis"). Trial demonstrated that, absent the direction from Arch's broker, plaintiff would not have bid above the surety-approved $5.5–6.0 million.

While Michael W. Thomas, a Surety Bond Broker at Willis, and Marcia Brooke Lafrenz, a Senior Client Manager at Willis, knew that they were acting without explicit authority from the surety, it is arguable that their behavior was not irregular. Both Mr. Thomas and Ms. Lafrenz testified that the practice is not uncommon that bids might escalate beyond the authorized amount—even, according to Ms. Lafrenz, as high as twenty percent. Transcript of Proceedings, *Aeroplate Corp. v. United States*, No. 05–736C, at 517, 645 (Fed.Cl. May 8–10, 2006) ("Tr."). Plaintiff's final bid was approximately twenty percent above the amount authorized by Arch.[3]

Defendant would have this court impute the risky, loose conduct of Willis to Aeroplate. Tr. at 20–21. However, to do so would be to misinterpret grossly the relationships between Willis, Arch and Aeroplate. An agency relationship existed not between plaintiff and Willis, but between Arch and Willis. *See* Power of Att'y, May 31, 2005, DX

---

1. The hearing moots Defendant's Motion for Leave To File Additional Evidence, filed Dec. 5, 2005. The administrative record, effectively, has been supplemented.

2. The court has issued two prior written opinions in this matter. On July 15, 2005, plaintiff's application for a temporary restraining order and preliminary injunction was granted. *Aeroplate Corp. v. United States*, 67 Fed.Cl. 1 (2005). The

court then extended the preliminary injunction, subject to approval by the Small Business Administration, on August 5, 2005. *Aeroplate Corp. v. United States*, 67 Fed.Cl. 4 (2005).

3. As a determination of whether Willis possessed unclean hands is unnecessary in the current proceeding, the court declines to make such a finding.

3, at 27–28. The evidence highlighted the fact that plaintiff was, legally and in practice, Willis's client. *See, e.g.,* E-mail from Marcia Brooke Lafrenz to Henry Nozko, Jr., June 14, 2005, DX 24.

### 2. *The timing of defendant's allegation*

Even assuming, *arguendo,* that defendant had established that plaintiff acted with unclean hands, defendant must still justify its delay in presenting its additional evidence to substantiate its charge of unclean hands. This it has failed to do. By way of explanation, defendant's counsel offers only that he was unaware until September 2005, when the Small Business Administration (the "SBA") initiated its review of plaintiff's competency, that plaintiff was contesting the notion that its bid was unauthorized.[4] *See* Tr. at 16–17, 303–305, 430–31. Defendant has provided the court with no reasons why it could not have presented its full case prior to issuance of the court's August 5, 2005 opinion. *See Aeroplate Corp. v. United States,* 67 Fed.Cl. 4 (2005).

Specifically, defendant is unable to justify its failure to explore the full knowledge of Contract Specialist Mike D. Mitchell. *See* Tr. at 19 (In his opening statement, defendant's counsel stated that "I take responsibility for not asking Mr. Mitchell to identify what happened in more detail."); Def.'s Br. filed Dec. 5, 2005, at 6–7 (offering no excuse for its untimely motion to supplement the record, but arguing only that "manifest injustice" might occur without leave). As the person in charge of contract administration, Mr. Mitchell would have cooperated fully with defendant, a fact of which defendant's counsel was not unaware. Indeed, Mr.

Mitchell provided defendant all of the documents related to the allegation in his possession in time for oral argument in July 2005. Tr. at 429–31. Defendant had sufficient information to make its allegation of unclean hands at that time, see *Aeroplate,* 67 Fed.Cl. at 9–10 (discussing evidence presented by defendant regarding Mr. Mitchell's investigation into validity of plaintiff's bid bond and contention that plaintiff admitted that it did not have bonding), but did not pursue additional evidence because it felt the record was "sufficient at the time," Tr. at 11.

Among the documents provided by Mr. Mitchell and in defendant's possession was an e-mail from Susan D. Neff, Senior Surety Counsel with Arch, dated June 23, 2005, which states that "authorization may have been incorrectly communicated by Willis . . . . [and] Aeroplate may have had [a] false sense of approval. . . ." DX 6. This e-mail should have served to disabuse defendant of its primary excuse—that plaintiff was not of the opinion that its bid was authorized—as well as to alert defendant of the importance of ascertaining the full extent of Ms. Neff' s knowledge on the issue of unclean hands.[5]

During the injunction proceeding, defendant was also in possession of a May 26, 2005 e-mail from Richard P. Hallett, an Executive Underwriter with Arch, to Mr. Thomas and Ms. Lafrenz, in which, Mr. Hallett gave notice to Willis that Arch was declining plaintiff's "$7 M + bid request." PX 46, Tab 17, Ex. 1. Defendant later submitted this e-mail as an attachment to Mr. Hallett's declaration, justifying its delayed submission with the statement that "it was not until Mr. Hallett submitted his declaration . . . that the import

---

4. Plaintiff vehemently has protested conducting a trial on the issue of unclean hands, contending that the matter was resolved as part of the SBA's investigation into Aeroplate's competency. See, e.g., Pl.'s Br. filed Nov. 9, 2005, at 1. The evidence presented at the May trial illuminated that, while the SBA may not have made a final determination with respect to plaintiff's unclean hands, they certainly investigated the matter. See Letter from M. Leonard Manzanares to Mary Williams, Aug. 22, 2005, PX 36, at Enclosure ¶ 7(b) (discussing SBA's investigation into "integrity and business ethics" as required by Federal Acquisition Regulation 9.104–1(d)); see also Handwritten Notes of Michael Thomas, Sept. 15, 2005, DX 22 (recording panicked phone call of

Mr. Williams to Mr. Thomas, in which Mr. Williams objects to Willis's change in position regarding the authorization of the bid amount).

5. Defendant also admits that it was previously aware of Ms. Neff' s account of the June 21, 2005 meeting. See Def.'s Br. filed Dec. 5, 2005, at 5. Her account was referenced in the administrative record that defendant submitted as part of the injunction proceeding. Tr. at 10–11, 53–54; cf. Order entered Dec. 20, 2005, at 6 (noting Mr. Mitchell's June 20, 2005 Phonecon Record, in which Ms. Neff indicated that Aeroplate and Willis were aware of the bid limit).

of this ... document[ ] manifested fully." Def.'s Br. filed Dec. 5, 2005, at 5; *see also* Tr. at 16–17. However, nothing prevented defendant from requesting that Mr. Hallett earlier clarify the document. Mr. Hallett signed his declaration, see PX 46, Tab 17, at 4, approximately ten weeks after the court issued its August 5, 2005 opinion, which granted a continuance of a preliminary injunction subject to the results of the SBA's review of plaintiff's competency, see *Aeroplate*, 67 Fed.Cl. at 14.

This court has long admired the ardent advocacy of defendant's counsel, but cannot ignore its shortcomings when defendant is urging a finding of unclean hands. The decision not to fully explore the extent of Messrs. Mitchell's and Hallett's knowledge was a litigation tactic, and this choice is attributable to defendant. Having heard all of defendant's "new" evidence, the court's view, as memorialized in its August 5, 2005 opinion, *Aeroplate*, 67 Fed.Cl. 4, remains unchanged.[6] Consequently, defendant's chosen litigation strategy has had no impact on the court's ultimate ruling; it only has further delayed it. Accordingly,

**IT IS ORDERED**, as follows:

1. This memorandum opinion and final order complements the bench ruling made May 10, 2006, and supersedes it to the extent that it is inconsistent therewith.

2. The Clerk of the Court shall enter judgment for plaintiff.

3. The preliminary injunction issued on July 15, 2005, is hereby converted to a permanent injunction. Defendant, through the Departments of the Army and the Air Force National Guard Bureau, its officers, agents, employees, and all other persons acting in connection therewith, shall not issue a notice to proceed to R.A. Burch Construction, Inc., or otherwise initiate performance of Contract No. W 912LA–05–C–0007 Repair/Construction Maintenance Hanger & Shops, Fresno Air National Guard Station, Fresno, CA, unless it awards the contract to plaintiff upon acceptance of performance bonding acceptable to the responsible contracting official.

4. A copy of this order was transmitted to counsel this date by facsimile transmission.

---

6. While the August 5 opinion did not make a specific determination with regard to the issue of unclean hands, the court's analysis of the evidence with respect to the merits of the claim was identical to that in analyzing the allegations of unclean hands. The court's December 20, 2005 order advised that the resolution of the cross-motions for judgment on the administrative record against defendant included the matter of plaintiff's alleged unclean hands.

